(No. 5865.   June 4, 1932.)

MEADA M. PALMER, Appellant, v. J. A. TERTELING & SONS and STATE INSURANCE FUND OF THE STATE OF IDAHO, Respondents.

[16 Pac. (2d) 221.]

J. H. Andersen and James F. Ailshie, Jr., for Appellant.

Charles F. Reddoch and J. J. McCue, for Respondents.

VARIAN, J.—Appellant initiated this proceeding before the Industrial Accident Board to recover workmen's compensation for the death of her husband, J. T. Palmer, against J. A. Terteling and Sons, a copartnership, and their surety, the State Insurance Fund. The board made an award allowing appellant $12 per week, for 400 weeks, compensation for the benefit of herself and three minor children, and $195 burial expenses. On appeal the district court adopted the findings of fact of the Industrial Accident Board but reversed its conclusions on questions of law, and vacated the award. From this judgment claimant appeals. There is no question as to the award in so far as the amount thereof and beneficiaries are concerned. The fundamental question is whether J. A. Terteling and Sons, and their insurance carrier, are liable for the payment thereof.

The findings of fact made by the Industrial Accident Board are sustained by the evidence and, in so far as the same have any bearing on the issues raised, are substantially as follows, viz.: On April 14, 1931, and for some time prior thereto, the copartnership of J. A. Terteling and Sons was engaged in building and repairing highways in Elmore county, under contract, and had secured payment of compensation to their employees by insurance with respondent, State Insurance Fund, as surety. Prior to April 14, 1931, one C. J. Palmer entered into a contract with respondent J. A. Terteling and Sons, whereby he agreed to furnish them with trucks and men to haul road material to and upon the road then under construction by said copartnership, for which said Palmer was to receive $3 per hour for each truck and driver for all the time they were

engaged in hauling road material for J. A. Terteling and Sons. Payment was to be made for the use of the trucks from the time each arrived on the job until it left the job. C. J. Palmer and J. A. Terteling and Sons likewise agreed that all employees of said Palmer should be covered by the insurance carried by said copartnership with the State Insurance Fund while engaged in working for J. A. Terteling and Sons, and that the cost of carrying said coverage should be deducted from the amount to be paid by J. A. Terteling and Sons to C. J. Palmer "for work done under their contract." The board also found that J. T. Palmer was employed by his brother, C. J. Palmer, to drive one of the trucks in hauling road material under the latter's contract with respondent J. A. Terteling and Sons; that the contract of hire between the Palmers required the driver, J. T. Palmer, to keep his truck in repair for the hauling job, and he was to receive from C. J. Palmer sixty cents per hour for all the time he was employed, i. e., "while driving the truck on the job, while repairing the truck, and while going to and from the job or to or from places for getting repairs for the truck or supplies used by said C. J. Palmer at a camp maintained by him for his crew." The board further found that on April 14, 1931, aforesaid, about 5:30 P. M., J. T. Palmer, acting under instructions of his immediate employer C. J. Palmer, left Mountain Home and proceeded to the place where J. A. Terteling and Sons were getting their road material, where he was informed by the foreman in charge that his truck would not be required until about midnight of said day; that he then returned to C. J. Palmer's camp and obtained another truck in which, under previous instructions from said immediate employer, he proceeded, with another employee of C. J. Palmer, to Glenn's Ferry to obtain repairs for the truck he was using in hauling road material and certain supplies (a sack of coal) for the C. J. Palmer camp. Having obtained said repairs and supplies J. T. Palmer and his fellow workman proceeded to return to the C. J. Palmer camp, intending to drive from there to

the place where the road material was to be hauled. When about one and one-half miles west of Glenn's Ferry, at about 11:00 P. M., the truck, while being driven by J. T. Palmer, overturned and fatally injured him so that he died from said injuries on April 16, 1931. The board likewise found "That the injuries from which J. T. Palmer died, as above said, were the result of an accident arising out of and in the course of his employment with the said C. J. Palmer, and that said C. J. Palmer had not at the time of said accident nor at the time of the death of said J. T. Palmer complied with the provisions of Section 6278 of the Idaho Compiled Statutes, 1919, as amended." (Providing for security for payment of compensation.)

The evidence shows that C. J. Palmer owned two trucks which he contracted to J. A. Terteling and Sons on the basis of $3 per hour for truck and driver, during the actual time engaged in hauling on their job. They were carrying insurance in the State Insurance Fund, paying a premium based upon their pay-roll at the rate of $2.50 per $100 thereof. · In making up their pay-roll statement for the insurance carrier they included therein the wages of the truck drivers at the rate paid by the immediate contractor for the actual time they were employed upon their job; not the amount they paid for the use of a truck and driver. In Palmer's case they included, in their pay-roll statement, sixty cents of the $3 per hour to be paid him, and deducted from his check the proportionate amount paid for premium. In no case did they include in the pay-roll statement wages of drivers for the time not actually engaged on their job, for which they paid Palmer at the rate of $3 per hour. Terteling and Sons were employing other trucks and drivers on this job at the time of the accident.

Appellant contends that the board having found that the injuries from which J. T. Palmer afterwards died were the result of an accident arising out of and in the course of his employment with C. J. Palmer, the trial judge, by his conclusion from all of the facts, found that, as a matter of law, J. A. Terteling and Sons, or their insurance carrier,

were not liable for compensation, made a finding of fact to that effect, and that the trial judge could not make a finding of fact contrary to those found by the Industrial Accident Board where the evidence sustained the latter's findings, citing C. S., sec. 6270; *McNeil v. Panhandle Lumber Co.*, 34 Ida. 773, 203 Pac. 1068; *Taylor v. Blackwell Lumber Co.*, 37 Ida. 707, 218 Pac. 356; *Kaylor v. Callahan Zinc-Lead Co.*, 43 Ida. 477, 253 Pac. 132. The authorities cited are not in point under the facts here. Neither the Industrial Accident Board nor the trial judge found as a fact that the injury arose out of J. T. Palmer's employment on the job of J. A. Terteling and Sons. In the final analysis the board. concluded as a matter of law, under the provisions of C. S., sec. 6287a, *post,* from the fact that the injury occurred in the course of J. T. Palmer's employment with his immediate employer, C. J. Palmer, that J. A. Terteling and Sons (under whom C. J. Palmer was a contractor) and their insurance carrier were liable for · the injury. From the same facts found by the board, and adopted by the trial judge, the latter concluded as a matter of law that (under said C. S., sec. 6287a) the employers or their insurance carrier were not liable for said injury. Neither the facts nor the findings are disputed. ''The application of the law to undisputed facts raises a question of law not of fact.'' (*E. T. Chapin Co. v. Scott,* 44 Ida. 566, 260 Pac. 172, 173.)

Appellant grounds her right to recover on the authority of C. S., sec. 6287a, enacted at the 1921 session of the legislature (Sess. Laws 1921, chap. 217, p. 481), reading as follows:

''Contractors and sub-contractors. An employer subject to the provisions of this Act, shall be liable for compensation to an employee of a contractor or sub-contractor under him or who has not complied with the provisions of section 6278 in any case where such employer would have been liable for compensation if such employee had been working directly for such employer. The contractor or sub-contractor shall also be liable for such compensation, but the

employee shall not recover compensation for the same injury from more than one party. The employer who shall become liable for and pay such compensation may recover the same from the contractor or sub-contractor for whom the employee was working at the time of the accident."

This statute has heretofore been before this court. In the first case, *In re Fisk,* 40 Ida. 304, 232 Pac. 569, the court stated that C. S., sec. 6287a, concededly did not apply (because passed after the injury) and decided that under C. S., sec. 6320 "the proprietor of a business and his surety may be liable for injury to a workman even though he is employed by and works under the direction of an independent contractor, provided the work being done at the time of the injury is a part of the particular business carried on by the proprietor." Answering an argument of appellant in that case the court said:

"In truth we see no conflict between the two sections. According to our interpretation C. S., sec. 6320, makes the proprietor of the business liable for injury to an employee of an independent contractor who is engaged in work connected with the business of the proprietor. The new section 6287a makes both proprietor and contractor liable and then provides that the proprietor, if he pays, may recover from the contractor. The liability of the proprietor is established by the old section, without the help of the new, but the new section contains some additional provisions."

Referring to the Fisk case the court later said:

"That case, however, recognizes that there may be independent contractors merely holding in line with C. S., sec. 6320, that the proprietor of a business is liable for an injury to an employee of an independent contractor who is engaged in work connected with the business of the proprietor, and that under C. S., sec. 6287a, both the proprietor and the independent contractor may be liable." (*E. T. Chapin Co. v. Scott, supra.*)

In the more recent case of *Modlin v. Twin Falls Canal Co.,* 49 Ida. 199, 286 Pac. 612, cited in both briefs, the court construed C. S., sec. 6287a. A canal company leased

a drilling machine, operated by two of its own employees, to a construction company. While operating the machine on the work of the construction company one of the employees was injured. The construction company had no direction of, or control over, these employees except to tell them where to drill, and had no right to discharge them. Their wages were paid by the canal company and afterwards billed by it to the construction company together with a rental charge for the use of the machine. It was held that there was no such direction or control of claimant by the construction company as could have constituted him its special employee. He was subject to the call of the canal company. After quoting C. S., sec. 6287a, *supra,* the court said:

"While holding the employer liable, this language gives him such a recourse against the contractor as makes the latter in effect primarily responsible. He had just as well pay first as last. Whether or not claimant's employer, the Canal Company, was operating *ultra vires* is immaterial. The fact remains that claimant was working, and working for the Canal Company. He was doing what his immediate employer directed him to do; and therefore covered by appellant's contract of insurance."

The facts distinguished the Modlin case from the one under consideration. In that case the immediate employer and his surety were held liable under this statute for an injury incurred by an employee in the line of his regular employment, though employed at the time on the work of another, as directed by the immediate employer. The decision is to the effect that both the canal company and the construction company, and their insurance carriers, are liable. Here the employee was injured while on an errand, or employed in a matter, outside of the business of the proprietor (J. A. Terteling and Sons). He had, for the time being, stepped outside the scope of the employment embraced within the contract between his immediate employer and the proprietor. (See *Crane v. Peach Bros.,* 106 Conn. 110, 137 Atl. 15; *Johnson v. State Highway*

*Commission,* 125 Me. 443, 134 Atl. 564; *Morey v. Battle Creek,* 229 Mich. 650, 38 A. L. R. 1039, 202 N. W. 925.) Prior to the accident deceased had been in the employ of, was paid by, and acted under the supervision of his immediate employer, C. J. Palmer. He also, at Palmer's direction, performed labor upon the job covered by J. A. Terteling and Sons' contract, and was subject to a certain degree of control by the latter. Their business was to construct and repair highways. C. J. Palmer's business, so far as the record discloses, was owning and operating trucks for hire. While so employed in the business of C. J. Palmer, not connected with the business of J. A. Terteling and Sons, J. T. Palmer was fatally injured by accident. The *non ex cathedra* statement made by the court, *In re Fisk, supra,* correctly states what we deem to be the law under the provisions of C. S., sec. 6287a. While the proprietor and his insurance carrier are liable thereunder for an accidental injury to the employee of a subcontractor, or contractor, under him, such liability extends only to injuries sustained while engaged in the work that is part of the particular business carried on by the proprietor under his contract.

So, in the instant case the immediate employer, or his insurance carrier if he had had insurance, was liable for the injury to J. T. Palmer, because when injured he was engaged in work that was part of the business of said immediate employer. Since when injured he was not engaged in any work that was part of the particular business carried on by J. A. Terteling and Sons neither they nor their insurance carrier, the State Insurance Fund, were liable.

C. S., sec. 6287a, limits the liability of an employer "for compensation to an employee of a contractor or subcontractor under him" to any case "where such employer would have been liable for compensation if such employee had been working directly for such employer." Assuming in the instant case that J. T. Palmer had been working directly for J. A. Terteling and Sons, as truck driver; that during a rest period, or at a time when not actually

employed on their road job, he had, at the request of his brother, C. J. Palmer, gone to Glenn's Ferry for a sack of coal for the latter and repairs for a truck owned and operated by the brother, and was accidentally injured on the way back to his brother's camp; under such supposed facts the injury would not arise "out of and in the course of his employment" (*Murdoch v. Humes & Swanstrom,* 51 Ida. 459, 6 Pac. (2d) 472) with J. A. Terteling and Sons, and neither they nor their insurance carrier could be held liable for compensation under the Workmen's Compensation Act.

Judgment affirmed. Costs to respondents.

Budge, Givens and Leeper, JJ., and Sutton, D. J., concur.

### ON REHEARING.

(December 1, 1932.)

VARIAN, J.—After reviewing the entire case upon reargument we are still of opinion that we were right in holding that an employee of a subcontractor, or contractor under him, is entitled (C. S., sec. 6287a) to compensation from the proprietor and his insurance carrier only when the injury arose out of and in the course of his employment in the particular business carried on by the proprietor under his contract. The original opinion will therefore stand.

Lee, C. J., and Budge, Givens and Leeper, JJ., concur.