Zbirowski, Appellant, *v.* John T. Lewis & Bros. Co.

Argued October 11, 1937.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD, PARKER, JAMES and RHODES, JJ.

*Thomas M. J. Regan,* with him *David Justin Dean* for appellant.

*Alexander R. Staples,* for appellee.

OPINION BY RHODES, J., January 27, 1938:

The court below, in this workmen's compensation case, sustained exceptions filed by defendant employer

to the action of the Workmen's Compensation Board in affirming the findings of fact, conclusions of law, and award of the referee in favor of claimant and her minor children for the death of the husband and father, an employee of defendant, and entered judgment in favor of defendant. Claimant, for herself and two minor children, has appealed from this judgment entered by the court below.

Claimant filed a claim petition on September 6, 1933, in which she averred that her husband and the father of her minor children, a lead furnace attendant, suffered an accident in the course of his employment with defendant in the month of May, 1931, between 12 o'clock midnight and 3 a. m. on a day, the exact date of which was unknown, and that, as a result of the accidental injury, he died on March 27, 1933. The claim petition further stated: "A piece of iron was thrown into or fell into the boiling lead and it caused the molten lead to splash on the arm and lower lip of the deceased, resulting in burns on the arm and lip." Defendant filed an answer to the petition in which it alleged that the cause of deceased's death was cancer of the lower lip, which had no connection with the accident or injury sustained by the deceased in the course of his employment. After hearings held by referee, the petition was dismissed and compensation disallowed. During the progress of the proceeding, the claim petition was amended to state that the injury to deceased was caused by flames or backfire or by oil igniting, and to fix March 6, 1931, as the date of accident. Claimant then appealed to the Workmen's Compensation Board which remanded the record to the referee for further hearing and determination, with instructions to ascertain whether the claimant desired to amend the claim petition by substituting October 24, 1929, as the date of the accident, and that, if the petition was so amended, the referee was instructed to appoint an impartial

cancer specialist. The claim petition was again amended, fixing the date of the accident on or about October 24, 1929. Hearings were held at which Dr. Thomas A. Shallow appeared as the impartial cancer expert. Considerable additional testimony, including medical, was introduced by defendant. The referee made new findings of fact and conclusions of law, and made an award in favor of claimant in her own right and on behalf of the dependent children of the deceased. Defendant appealed to the board which affirmed the findings of fact, conclusions of law, and award of the referee. Defendant's appeal to the court of common pleas was sustained, the board reversed, and judgment entered for defendant. This appeal followed.

The appeal involves two questions: (1) Whether there is competent evidence to sustain the findings of fact and award of the referee as affirmed by the board; and (2) whether defendant is entitled to a credit of $1,300 on account of the award.

It is incumbent upon us to view the evidence in the light most favorable to claimant, as the fact-finding bodies have determined the factual issues in her favor.

The record is not free from confusion, but much of this may be attributed to the fact that the hearings were held in 1934 and 1935, while the accidental injury which the deceased employee sustained was, as found by the referee and board, on October 24, 1929.

The evidence shows that deceased suffered an injury as the result of an accident while in the employ of defendant; that there was only one such accident; and that deceased was burned on that occasion only. The testimony is conflicting as to when it occurred. Claimant's witness Louis Dombroski, a fellow workman, testified that deceased, about midnight, was burned when flames shot out from an oil burning lead furnace; that, in order to quench the fire, he threw a bag over the head and arms of deceased; that Chaminski, the

foreman, was at dinner when the accident actually happened, but that he was there immediately afterwards and talked to deceased. Joe Sikadorn, a witness for defendant, described the occurrence in practically the same manner, and testified that Dombroski was there at the time. Dombroski testified that the accident happened on or about the 6th of March, 1931; Sikadorn fixed the time about November, 1928. Theodore Chaminski, called by defendant, testified that he was foreman in defendant's plant in 1929; that he had been there employed for 23 years; that deceased worked under him at night; that deceased was an employee of defendant down to March, 1932; that he came in as the accident happened; that he did not know the exact date; that he gave deceased some linseed oil; that about 2 years after the accident he noticed a sore on deceased's lip; that the day foreman sent deceased to the company doctor at the time the sore was observed by the witness. Dr. Scull, the company doctor, testified that on April 5, 1932, deceased came to him, and he found a small sore on deceased's lip, and on April 18, 1932, sent him to the Episcopal Hospital. Claimant and her daughter were positive that the accident happened in May, 1931; but claimant testified that, when deceased came home on the morning of the accident, he had a pint of linseed oil given to him by Chaminski for his burns, and that deceased was never burned except on this one occasion. Defendant's record introduced in evidence showed that deceased suffered an accident in its plant on October 24, 1929, at 12:30 a. m., and contains the following: "Nature of injury: Burn of face left side. Describe how accident occurred: Was lighting oil burner when flame shot out hitting face and causing burn."

Claimant offered in evidence the records of the Episcopal Hospital and of the Jeanes Hospital. They were received without objection. Deceased was admitted to

the former on April 18, 1932, and to the latter on July 5, 1932. The Episcopal record shows the following: "Patient [deceased] states that about 2 years ago burned on the face with oil, several days later noticed several small blisters on the lower lip which he states have enlarged during a course of time, including at present the entire lower lip. Patient states that he did not notice definitely that there was a growth on the lower lip until one year ago." The Jeanes record contains the following: "The patient [deceased] states that approximately 2 to 3 years ago he noticed a whitish nodule just within the lower lip near the outer angle which slowly changed to a red and became ulcerated about three months ago. He can ascribe no apparent cause. ...... He is quite certain that there was no ulceration previous to a course of radiation which was given three months ago." About April 23, 1932, deceased went to the Philadelphia General Hospital for radium treatment. The record of the Philadelphia General Hospital, offered in evidence by defendant, contained the following: "Give your own version of the cause of the present trouble: Don't know."

Notwithstanding the conflicts in the evidence as to the date of the accidental burn which deceased suffered while in the employ of defendant, we think the record contains competent evidence which supports the finding by the referee and board that the accident in question occurred on October 24, 1929. A common sense view of the evidence supports such finding; and it seems to us that the compensation authorities had a sufficient factual basis for finding that deceased's accidental burn occurred on or about October 24, 1929.

The material finding of fact made by the referee and affirmed by the board is: "3. That on October 24, 1929, John Zbirowski, claimant's decedent, while working in the employ of the defendant and engaged in lighting oil burner of the furnace on which he was employed,

met with an accident wherein he sustained burns of his face and lip which subsequently resulted in carcinoma (cancer) of the lower lip and caused him to be totally disabled on and after December 17, 1932 and caused his death on March 27, 1933. That the cause of death of the decedent on March 27, 1933, was (1) radium reaction of the lips, and (2) carcinoma of the lower lip."

In its opinion reversing the board the court below said: "The Referee's award appears to us to depend upon Dr. Shallow's opinion that there was a causal connection between the burn of October 24, 1929 and the cancer of the lip which caused the decedent's death but after a careful review of the entire record we have reached the conclusion that the opinion of the learned expert is based on a pure assumption which is not founded on any proof and hence the Referee's findings and award are unsupported by any legally competent evidence."

From our examination of the record we do not arrive at the same conclusion as the court below. It does not appear, as the court below states and as defendant argues, that the referee and board depended upon the testimony of Dr. Shallow alone to support their finding of causal connection. Dr. Shallow, the impartial expert selected by the referee, and Dr. C. A. Whitcomb, an expert who testified on behalf of defendant, based their opposite conclusions largely on factual assumptions, some of which were warranted and some not. Experts should not assume the prerogative of deciding ultimate facts when called as witnesses in compensation cases. This power is vested solely in the fact-finding bodies before which they appear. But there is competent evidence in the record to support the finding that the accidental injury on October 24, 1929, caused deceased's condition and ultimate death.

Although the referee, upon the record being remitted

by the board, made new findings of fact contrary to those which he originally made after the first hearings, such findings which have been affirmed by the board must be sustained if there is competent evidence to support them. Under the present state of medical science as to the specific cause of cancer, the compensation authorities were not obliged to follow any particular theory. It is obvious, from a review of the record, that the various witnesses who were called to testify and deceased, in his statements recorded in the hospital records, refer to the same event when deceased was accidentally burned while in defendant's employ. The fact that the witnesses who were testifying several years thereafter differ as to the date of the accident does not make their testimony incompetent and require that it be discarded for that reason. For example, there would seem to be no question that Sikadorn, defendant's witness who testified that the accident occurred in 1928, was referring to the same state of facts as Dombroski, claimant's witness, who was sure it happened in 1931. The same can be said of the testimony of claimant and Chaminski, and of the testimony of Chaminski, Dombroski, and Sikadorn. The compensation authorities could give the testimony of each witness such consideration as it might deserve, and accept or reject it in whole or in part accordingly.

Claimant described the condition of deceased when he returned home after being burned in defendant's plant. She testified that he was burned on his hands, face, and lip, and that the latter never did heal up properly; that "it just came out in a little pimple"; that deceased never had any other burns except on the one occasion; that he brought with him from the plant, on the morning of the accident, a pint of linseed oil given to him by the foreman. Laura Zbirowski, daughter of deceased, also testified that on the morning of the accident when deceased returned home she observed

his condition, and saw a burn on his lip; that it appeared at the time like a white pimple; that it never healed up right; that it would heal up and then return; that he had no medical treatment until about April, 1932. The medical experts who testified seem to agree that cancer does not develop from a first degree burn or erythema. As a blister formation is a second degree burn, then the testimony is sufficient, in our opinion, to show that deceased suffered at least a second degree burn on October 24, 1929. It is true that defendant's record of the accident does not indicate the extent of the burns. From that record it could not be found that the burns were of a first or greater degree. But it must be considered that Louis Dombroski testified that, and we have no doubt that he was referring to the same incident as was recited in defendant's record notwithstanding the date he gave, he was obliged to throw a bag over deceased's head and arms and smother the fire. Then, again, Sikadorn, defendant's witness, testified that the face burns did not heal up for about two weeks. Although the Episcopal Hospital record contains a statement that deceased noticed small blisters on his lips several days later, the daughter testified that there was a blister on the lip, according to her observation, when she saw deceased a few hours after the accident. On being admitted to the Episcopal Hospital on April 18, 1932, deceased had, as the records show, on the lower lip, a growth, large crust, ulcerative in character, and more or less superficial in nature. The Jeanes Hospital record disclosed a working diagnosis on July 5, 1932, of (1) carcinoma of the lower lip, and (2) post radiation burns and ulceration of both lips; and a final diagnosis of (1) radium reaction of the lips, and (2) probable carcinoma of the lower lip.

Dr. Gabriel J. Kraus testified, without objection, that he saw deceased in March, 1933, two weeks before his death; that deceased told him he was burned while

he worked for defendant; that he did not recall the exact date, but that others knew it; that he was burned on the lower left lip; that the lip never healed; that the ulceration never got any better; and that he was treated at the Episcopal and other hospitals. From the history of the case, and from his observation of the deceased, which was shortly before he died, Dr. Kraus stated that, in his professional opinion, deceased died of a cancer which had its original and direct cause in this burn; and that the date when the burn occurred, if it had not healed, made no material difference. As to hearsay evidence admitted without objection, see *Poluski v. Glen Alden Coal Co.*, 286 Pa. 473, 133 A. 819; *Johnston v. Payne-Yost Construction Co. et al.*, 292 Pa. 509, 141 A. 481; *Harrah v. Montour Railroad Co.*, 321 Pa. 526, 528, 184 A. 666; *O'Boyle v. Harry Seitz & Sons*, 105 Pa. Superior Ct. 135, 160 A. 145; *Broad Street Trust Co. v. Heyl Bros. et al.*, 128 Pa. Superior Ct. 65, 71, 193 A. 397. See, also, *Eby v. Travelers Insurance Co.*, 258 Pa. 525, 102 A. 209. Claimant also called Dr. Ralph Goldsmith as a medical expert. A hypothetical question was put to him on the basis of which he testified that, in his professional opinion, the burn deceased suffered in October, 1929, was the exciting factor and contributory cause of the cancer of the left side of the lower lip, which resulted in deceased's death. It does not appear that the hypothetical question contained assumed facts which were not warranted by the evidence. The witness was fully cross-examined by counsel for defendant. See *Albert v. Philadelphia Rapid Transit Co.*, 252 Pa. 527, 97 A. 680.

We think that the evidence establishes sufficient facts from which it may be properly inferred that deceased had at least a second degree burn as a result of the accident on October 24, 1929; that the burn never properly or permanently healed; and that its presence

was continuous until on the ulceration a cancer developed, which caused deceased's death on March 27, 1933. From the competent evidence in the case, the conclusion is justified that the accidental burn on October 24, 1929, was the exciting or contributing cause of the cancer of deceased's lip.

Whether defendant is entitled to a credit of $1,300 as a payment on account of the award remains to be considered. All of the relevant facts pertaining to such alleged credit have been agreed to by counsel in a stipulation filed with the Workmen's Compensation Board on July 1, 1936. The board filed a supplemental opinion on August 4, 1936, readopting their opinion of June 25, 1936. The board found that the death benefit certificate, hereinafter quoted, was issued in the form of insurance, and not as compensation. The credit was not allowed. From the agreed facts it appears that deceased was continuously in the employ of defendant from September 22, 1920, until December 17, 1932; that claimant died on March 27, 1933; that the board made an award to his widow, the claimant, and her dependents, on October 26, 1935, as the result of an alleged accidental injury sustained by the deceased in the course of his employment with defendant on October 24, 1929. On February 18, 1932, defendant, a subsidiary of the National Lead Company, issued to deceased the following certificate:

"NATIONAL LEAD COMPANY
"[The Emp .... Herein]
"Agrees, upon presentation ....itable proof of the death of
"JOHN BORSKI[1]
"[The Em ..... erein]
"occurring during the ......... ent by the Employer

---

[1] Also known as John Zbirowski.

"To Pay To KATEE BORSKI[2] HIS WIFE, the Beneficiary designated by the Employee and a . . . . . ed by said National Lead Company, either in a lump sum or in installments at the Employer's discretion, A SUM OF MONEY equivalent to the Employees annual salary or wage at the rate in effect immediately before the death of the Employee, but in no case more than Five Thousand Dollars, all as set forth below.

"Should a claim hereunder arise out of accident, injury, or disease which may provide the basis of a claim against the Employer under a workmen's compensation statute or the rules of the common law, any amount paid hereunder shall be deemed, to the extent of such payment, satisfaction of such claim under such statute or rules; and vice versa.

"The benefits hereunder are subject to change or withdrawal by National Lead Company without notice.

"The Plan of the Benefits

"The benefits shall be an amount equal to the annual salary or wage at the rate in force at the time of death, carried to the next highest multiple of one hundred dollars except where such amount is such multiple, and in no event to exceed five thousand dollars. Fifty-two times the normal weekly or twelve times the normal monthly salary or wage shall be deemed the annual salary or wage for the purpose of computing these benefits. Benefits for pensioners shall be in the uniform amount of one thousand dollars.

"NATIONAL LEAD COMPANY
"Dated Feb. 18, 1932        "Edward J. Cornish

"HAMLIN & CO.        "x x F. x M x Carter x x x x x

"By E. G. NIESENBAUM                    President
            "Certificate Number 3556"

---

[2] Also known as Catherine Zbirowski.

On April 13, 1933, following deceased's death on March 27, 1933, defendant, through the National Lead Company, caused to be paid to claimant the lump sum of $1,300, upon the terms and conditions set forth in the certificate. Claimant executed and delivered to defendant in the name of the National Lead Company the following receipt:

"RECEIVED OF NATIONAL LEAD COMPANY the sum of Thirteen Hundred Dollars ($1300.00) in full settlement of all benefits payable on account of the death, on March 26, 1933, of John Borski, employee of JOHN T. LEWIS & BROS. COMPANY, a subsidiary of said National Lead Company, in accordance with the provisions of the Employees Death Benefits Plan of said Company.

her<br>
"Signed: Katee (X) Borski,<br>
mark

"(Katee Borski otherwise known as Catherine Zbirowski, widow and beneficiary)

"2665 Belgrade St.

"Witnessed by A. M. Wheatley,

"John T. Lewis & Bros. Co.,

"2545 Aramingo Ave.

"Dated: April 13, 1933."

On the date of the payment no claim for workmen's compensation had been made for deceased's death. Neither deceased nor his widow at any time made any contribution or payment to defendant or to the National Lead Company for the purpose of securing any of the benefits or sums that accrued to claimant under the terms and conditions of the certificate. All sums, expenditures, costs, and charges in any manner connected with the maintenance, operation, and payment of the benefits accruing to claimant under the certificate, or to other employees of defendant on similar certificates issued in the name of the National Lead

Company, were paid and assumed by defendant, and were charged against the operating expenses of defendant, which is a self-insurer under the provisions of the Workmen's Compensation Act of this state. The fund for payment of compensation claims by defendant is maintained in the name of the parent company, the National Lead Company, by payments made to that fund by defendant, and all payments in discharge of workmen's compensation liability to the employees of defendant or their dependents are made from that fund, including payments made under the death benefit certificates where employee's death provides the basis of a claim against defendant under the compensation law. The fund for payment of death benefit claims to the beneficiaries of employees of defendant is maintained in the same manner, and all payments in discharge of the voluntary obligation of defendant under the death benefit certificates issued to its employees where the employee's death does not provide the basis of a claim against defendant under the compensation law are made out of the fund provided by the defendant for that purpose. The acceptance by the deceased of the voluntary death benefit certificate issued to him on February 18, 1932, by defendant did not cause any increase or decrease in the salary or wages paid to him by defendant for his services as an employee at any time before or after the issuance of the certificate. Hamlin & Company, whose signature is appended to the certificate, is an agent of defendant and of the National Lead Company, and is not an insurance company, nor is it a guarantor of the benefit payments under the provisions of the death benefit certificate. There is no other contract regarding the method of payment of death benefits other than the provisions which appear on the face of the certificate itself. There is no special system or agreement provided for making payments. The money is paid directly to the beneficiary named by the

employee on suitable proof of death of every employee who has completed one year of continuous employment, and, if the beneficiary requests the amount of the benefits in regular installments and not in a lump sum, such payments are so arranged.

It is defendant's contention that payment to the claimant under the death benefit certificate was a payment pro tanto of any liability of defendant under the Workmen's Compensation Act of 1915, as amended (77 PS § 1 et seq.). This act governs the relationship of the parties, and controls the nature and extent of any recovery by claimant for the death of her husband as a result of an accident in the course of his employment with defendant. Such credit as defendant seeks must be provided for or permitted expressly or by implication by the act itself. Section 204, article 2 of the act (77 PS § 71), provides: "No agreement, composition, or release of damages made before the happening of any accident, except the agreement defined in article three of this act, shall be valid or shall bar a claim for damages for the injury resulting therefrom; and any such agreement, other than that defined in article three herein, is declared to be against the public policy of this Commonwealth. The receipt of benefits from any association, society, or fund shall not bar the recovery of damages by action at law, nor the recovery of compensation under article three hereof; and any release executed in consideration of such benefits shall be void." Section 301, article 3 of the act (77 PS § 431), is, in part, as follows: "When employer and employe shall by agreement, either express or implied, as hereinafter provided, accept the provisions of article three of this act, compensation for personal injury to, or for the death of, such employe, by an accident, in the course of his employment, shall be made in all cases by the employer, without regard to negligence, according to the schedule contained in sections three hundred and

six and three hundred and seven of this article; provided that no compensation shall be made when the injury or death be intentionally self-inflicted, but the burden of proof of such fact shall be upon the employer."

Defendant's argument ignores the fact that to be entitled to a credit on the award the payment must have been made as compensation "according to the schedule contained in sections three hundred and six and three hundred and seven" of article 3 of the Workmen's Compensation Act of 1915, as amended (77 PS § § 511-512-513, 561-562). Payment of benefits under the death benefit certificate would be no bar to full recovery of compensation under article 3 of the act, unless the payment of such benefits can be construed as payment of compensation as provided by the act. Prior to the Workmen's Compensation Act of 1915 (77 PS § 1 et seq.), contracts between employer and employee exempting the employer from liability for future negligence were void as against public policy. However, the validity of contracts of membership with relief associations, which expressly stipulated that the acceptance of benefits after an accident should operate as a release of the company's liability for damages, was sustained. See *Johnson v. Philadelphia & Reading R. R.*, 163 Pa. 127, 29 A. 854; *Ringle v. Pennsylvania R. Co.*, 164 Pa. 529, 30 A. 492; *Riddell v. Pennsylvania R. Co.*, 262 Pa. 582, 106 A. 80. The Workmen's Compensation Act of 1915 (77 PS § 1 et seq.) changed the law, and the legislature thereby declared a public policy different from that previously existing. "The legislature has, in effect, declared that it is inexpedient and against public policy to enforce these contracts, so far as they stipulate for a release from damages by the acceptance of benefits thereunder, and that all such releases 'shall be void' ": *Riddell v. Pennsylvania R. Co.*, supra. 262 Pa. 582, at page 588, 106 A. 80, at page 82.

The only question here is whether the payment of the $1,300 to claimant, under the death benefit certificate, was paid as compensation under article 3 of the act. From the certificate itself and from the agreed statement of facts, it is quite obvious that benefits to be paid under the certificates were to be gratuitous or voluntary payments under the plan which had been adopted by the defendant company. It also appears that two separate funds were maintained; one to meet defendant's compensation liability, and the other the death benefits to beneficiaries of defendant's employees. The certificate also provides that benefits thereunder are subject to change or withdrawal by defendant, without notice, and that payments may be made under the certificate, either in a lump sum or in installments, in the discretion of the employer. It is significant that any one may be designated a beneficiary by the employee, subject only to approval by the employer; and the benefits do not conform to those to be paid under the compensation act. In fact, the benefits to be paid under the certificate have no relationship to the schedule of payments provided by the act. The payment to claimant cannot possibly be construed as a compensation payment within the provisions of the act. Defendant relies on the case of *Somerton v. Bell Telephone Company of Pennsylvania*, 111 Pa. Superior Ct. 264, 169 A. 579. In that case defendant took the position (a) that payments made to claimant from the fund in question were not "payments of compensation," within the meaning of the act; and (b) that the disability upon which the claim was based was not attributable to the accident. The board found that the benefits paid to claimant were as compensation for disability due to accidental injury. The fund was maintained by defendant to provide benefits for employees suffering disability due to sickness and accidental injuries. The plan was administered by an employee's benefit

committee with wide discretionary powers. There was no discrimination between compensable and noncompensable accidents; the payments equaled or exceeded the schedules in the Workmen's Compensation Act, and were not to be less than those provided under the act. The fund was, in effect, a compensation reserve, and the fact that cases not otherwise compensable were paid therefrom did not change its character. Speaking for this court, Judge CUNNINGHAM in his opinion said, at page 271: "It makes little difference, in our opinion, by what name the payments were called by the committee or what cause of disability was placed upon its records, or that the printed form used in making the original report was entitled 'Report of sickness disability,' rather than the form for accident disability.

"The material matters for consideration by the referee and board, upon this branch of the case, were that the proper representatives of the defendant knew claimant had met with an accident; that she was totally disabled within three days thereafter; and that the policy of defendant was to pay an employee, disabled by an accident in the course of her employment, 'benefits' in the same amounts as the compensation payments prescribed by our Workmen's Compensation Law.

"The purpose of the proviso to section 315 was pointed out in *Chase v. Emery Manufacturing Co.,* 271 Pa. 265, 113 A. 840.

"We think there was sufficient competent evidence upon this record to meet the requirements specified in the authorities." [Cases cited.]

It is true the certificate states that *any amount paid* thereunder shall be deemed, to the extent of such payment, satisfaction of a claim arising out of accident, injury, or disease which may provide the basis of a claim against defendant under the Workmen's Compensation Law or the rules of the common law; but the

receipt of benefits thereunder by claimant, in the instant case, is no bar to recovery of compensation as allowed by the act for herself and the minor dependents of deceased. There is no statutory provision permitting the allowance of the credit claimed by defendant in this case.

Judgment is reversed, and the record is remitted to the court below with direction that it enter judgment in accordance with the award.