No. 18,590.

DELLA JOHNSON, ET AL. *v.* INDUSTRIAL COMMISSION OF
COLORADO, STATE COMPENSATION INSURANCE FUND, ET AL.
(328 P. [2d] 384)

Decided July 28, 1958.   Rehearing denied August 18, 1958.

Mr. EUGENE O. PERKINS, for plaintiffs in error.

Mr. HAROLD CLARK THOMPSON, Mr. LOUIS SCHIFF, Mr. ALIOUS ROCKETT, Mr. FRED BODEN DUDLEY, for defendants in error State Compensation Insurance Fund and Aldridge Mercantile Company.

Mr. DUKE W. DUNBAR, Attorney General, Mr. FRANK E. HICKEY, Deputy, Mr. PETER L. DYE, Assistant, for defendant in error Industrial Commission of Colorado.

*En Banc.*

MR. JUSTICE FRANTZ delivered the opinion of the Court.

THE widow and minor child of the decedent were unsuccessful before the Industrial Commission in their claim for death benefits in a workmen's compensation case. Having exhausted their administrative remedy, they initiated proceedings in the district court by complaint, seeking to have set aside the determination of the Commission. After a hearing the trial court entered judgment affirming the action of the Commission, and we now are asked to reverse this judgment on writ of error.

The decedent, Charles Johnson, was employed by the Aldridge Mercantile Company as a truck driver. According to the claim for compensation, the decedent was injured on January 9, 1956, and again on January 27, 1956, in each instance as a result of handling heavy merchandise, and by reason of said injuries death ensued on February 9, 1956.

After the injury which occurred on January 9, 1956, the employer filed its report of the accident. Through

its agent the employer reported that the accident occurred "while [the employee was] loading merchandise from manufacturers for" the employer, and that the employee's "4th and 5th ribs [were] cracked" as a result thereof.

Proof of death was furnished to the Commission by the employee's attending physician who stated that the immediate cause of death was "traumatic pneumonia," and that the remote cause of death was "injury to chest wall."

An autopsy was performed by Dr. Beattie, a surgeon, whose written account of the examination, together with his conclusions, was received in evidence. It was his opinion that "death occurred as a complication of pneumonia and empyema, right, involving all lobes of the right lung. This was a sequel to rib injury sustained within three weeks of his demise. Probable immediate cause of death was toxemia and right heart failure."

This doctor testified at length at the hearing. In his opinion the decedent received a chest wall injury. He stated that the discoloration of the right chest wall, both on the inside and the outside, indicated that decedent had undergone a "reasonably severe injury"; that it appeared "as though he had an injury due to direct violence"; that it "looked as though he had either fallen or something, or something had hit him, or something of that nature." He could not reconcile the injury which he found with lifting or straining.

Over objection of the Fund and the employer that it was hearsay, claimants were allowed to introduce in evidence statements of the decedent, made sometime after the occurrences, that after he had loaded his truck on the first date of injury his back and right side "started hurting him," and that on the second date of injury, "when he was delivering he lifted a sack of sugar and he felt something crack."

At the request of the State Compensation Insurance Fund the entire file and claimant's evidence was de-

livered to Dr. Condon, a specialist in thoracic surgery, for him to study and make a report of his findings and conclusions. In part his letter states:

" * * * There is nothing in the transcript to show that Mr. Johnson met with an accident which severely contused the right chest wall, resulting in damage to the soft tissues, or to the ribs. If such did take place, it did not appear in the testimony. Original reports by Dr. Houf of Colorado Springs make no mention of chest wall injury, either historically or objectively. Nevertheless, at post-mortem examination, thirteen days following the alleged strain, death was found to be due to a marked pneumonia and empyema. The question naturally arises as to the relationship of his pneumonia and its complicating empyema, with the alleged strain of lifting. To my knowledge, strain will not cause a pneumonia or a pneumonitis. I have never seen this in my experience, nor have ever heard of such being reported. Further, it is quite difficult to explain, physiologically, how a pneumonitis severe and localized to the right lower chest, could result from a strain."

Claimants requested that they be afforded the opportunity of questioning the specialist. A further hearing was held at which the doctor testified that a bacterial pneumonia "will quite frequently superimpose upon a so-called chemical or traumatic pneumonia"; that he never examined the decedent and never saw him at any time; hence, he could not say definitely that the decedent did not have a chest wall injury.

The remainder of his testimony was to the effect that there was no evidence of trauma to the chest as manifested by the transcipt he read; that he based his "entire conclusion on the fact that there had been no injury to the chest wall or to the lung"; that the decedent, according to the transcript, "received a severe strain and thereafter, three weeks later, died of pneumonia and empyema"; and that traumatic pneumonia does not result from a strain.

The Order of the Referee, adopted and confirmed by the Commission on application for review, contains the following language:

"Charles W. Johnson was employed by the respondent employer as a truck driver. It is alleged that after loading his truck on January 16, 1956, his back started hurting him sufficiently to cause him to seek medical relief the next day, after which he was unable to work for three successive days. It is further alleged that on January 27, 1956, he re-injured his back when he lifted a sack of sugar in the course of his duties. He was unable to work the following day and thereafter. On February 9, 1956, Mr. Johnson died as a result of pneumonia and empyema, which the Referee finds was of the bacterial type and not the result of trauma, twist or turn and, therefore, not the result of an accidental injury within the meaning of the Workmen's Compensation Act.

"Death not being due to accidental injury and there being no evidence of a compensable occupational disease,

"IT IS ORDERED: That claimant's claim for compensation and medical benefits by reason of the death of her husband on February 9, 1956, be and the same is hereby denied and dismissed."

The right to compensation for an injury springs into being where the necessary employer-employee relationship exists and both the service being performed and the injury sustained arise out of and in the course of the employment. C.R.S. '53, 81-13-2. None of these prerequisites was determined in this case; by tacit agreement of all concerned they were deemed present; the only point found and decided was that the decedent did not die of a pneumonia induced by "trauma, twist or turn," or a "compensable occupational disease."

In its report of the first misadventure of the decedent the employer informed the Commission that decedent sustained cracked 4th and 5th ribs "while loading merchandise from manufacturers for" it. These were

declarations against the interests of the employer. "We do not mean to say that such first report of an accident is necessarily conclusive, but its weight as evidence was for the commission to determine." *New Jersey Fidelity & Plate Glass Ins. Co. v. Patterson,* 86 Colo. 580, 284 Pac. 334.

The proof of death prepared and submitted by the attending physician informed the Commission that the remote cause of death was an "injury to the chest wall," and the immediate cause "traumatic pneumonia." It was the conclusion of the doctor who performed an autopsy that death occurred as a complication of pneumonia and empyema which was a sequel to rib injury sustained a few weeks before death. He stated that the probable immediate cause of death was toxemia and right heart failure.

The entry into the chest cavity, according to this doctor, showed an injury to the chest wall, that the inside of the right chest and the discolored outside of the chest indicated an injury due to direct violence. "He looked as though he had fallen or something, or something had hit him, or something of that nature."

Did the record in this case permit the Commission to draw either of two inferences: (1) that decedent had suffered strains as indicated by hearsay evidence, or (2) that decedent had sustained an injury to the chest wall from a fall, or blow, or similar severe casualty as indicated by the opinion of the doctor who performed the autopsy? Apparently the thoracic expert, on the basis of evidence that the decedent had strained himself on two occasions, and rejecting the testimony of the attending physician and the autopsy surgeon, concluded that death resulted from bacterial pneumonia unrelated to any injury. The referee, and then the Commission, adopted this view, and denied compensation to the dependents.

We are persuaded that the action of the Commission

was unwarranted and erroneous, and the trial court in error in sustaining the Commission.

We recently held in a workmen's compensation case that hearsay testimony can only have probative force when corroborated by evidence generally recognized as admissible by the common law. *Williams v. New Amsterdam Casualty Co.*, 136 Colo. 458, 319 P. (2d) 1078. A "residuum of legal evidence" must bolster the hearsay evidence before such hearsay may be considered by the Commission.

In this case the hearsay testimony relating to strains suffered by the decedent, unaccompanied by a residuum of legal evidence, was insufficient to establish the element of causation of death; it could only have probative value when reinforced by evidence recognized as admissible under the common law.

Dr. Condon reviewed the entire file and transcript of evidence in this case, and rejected the opinion of the doctor who performed the autopsy. He invaded the province of the Commission in inferring that the record revealed strains suffered by the decedent and upon the basis of such inference gave it as his conclusion that, since in his opinion strains do not produce traumatic pneumonia, death resulted from bacterial pneumonia unrelated to any injury.

It was not for this witness to decide in which of two conflicting inferences credit should be reposed. This is tantamount to an expert witness determining what is credible and what is not credible testimony. There is no sanction in the law for an expert usurping a function vested solely in the fact-finding body. *Campanale v. Metropolitan Life Ins. Co.*, 290 Mass. 149, 194 N.E. 831, 97 A.L.R. 1282; *Henson v. Kansas City*, 277 Mo. 443, 210 S.W. 13.

"From our examination of the record we do not arrive at the same conclusion as the court below. It does not appear, as the court below states and as defendant argues, that the referee and board depended upon the

testimony of Dr. Shallow alone to support their finding of causal connection. Dr. Shallow, the impartial expert selected by the referee, and Dr. C. A. Whitcomb, an expert who testified on behalf of the defendant, based their opposite conclusions *largely on factual assumptions, some of which were warranted and some not. Experts should not assume the prerogative of deciding ultimate facts when called as witnesses in compensation cases.* This power is vested solely in the fact-finding bodies before which they appear." (Emphasis supplied.) *Zbirowski v. John T. Lewis & Bros. Co.,* 130 Pa. Super. 222, 196 Atl. 606.

The judgment is reversed and the trial court directed to remand the claim to the Commission which shall decide whether the facts bring the claim within the provisions of C.R.S. '53, 81-13-2, and make further determinations consonant with the views herein expressed.

MR. JUSTICE SUTTON not participating.