No. C-284

**San Isabel Electric Association, Inc., and Division of State Compensation Insurance Fund v. Clifford F. Bramer and Industrial Commission of Colorado**
(510 P.2d 438)

Decided May 29, 1973.

16

Alious Rockett, Francis L. Bury, Robert S. Ferguson, for Petitioner Division of State Compensation Insurance Fund.

Preston, Altman and Parlapiano, for petitioner San Isabel Electric Association, Inc.

Laurence A. Ardell, for respondent Clifford F. Bramer.

John P. Moore, Attorney General, John E. Bush, Deputy,

Peter L. Dye, Assistant, for respondent Industrial Commission of Colorado.

*En Banc.*

MR. JUSTICE ERICKSON delivered the opinion of the Court.

The Industrial Commission adopted its referee's order and affirmed a Workmen's Compensation award to Clifford F. Bramer. The commission upheld the referee's finding that the San Isabel Electric Association, Inc. qualified as Bramer's constructive employer for Workmen's Compensation purposes under the provisions of C.R.S. 1963, 81-9-1. The Court of Appeals affirmed the commission. *San Isabel Electric Association v. Bramer,* 31 Colo. App. 134, 500 P.2d 821 (1972). San Isabel thereafter petitioned for certiorari. We issued a writ of certiorari and now affirm the Court of Appeals.

The San Isabel Electric Association is in the business of retailing electrical energy and operates and maintains electrical transmission and distribution lines. Bramer, who is the claimant, was employed by the Pueblo Aircraft Service which was owned by Vernon L. Warren. The Pueblo Aircraft Service contracted with the San Isabel Electric Association to provide an airplane and pilot to make aerial inspection trips of the Association's electrical transmission and distribution lines which could not be readily inspected from the ground. The greater part of the Association's lines are maintained by employees of the Association who inspect and repair the lines from the ground. However, part of the transmission lines are in mountainous areas and must be inspected from aircraft. In the past, the Association has owned and operated its own aircraft, but in recent years, the Association has contracted to have the Pueblo Aircraft Service make the aerial inspection trips. The written contract calls for the Association to provide an observer who is to be flown over the inaccessible lines by the Pueblo Aircraft Service on a monthly basis.

Bramer, on numerous occasions, flew inspection trips with observers furnished by the Association. In order to properly inspect the power lines from the air, it was necessary to fly at an extremely low altitude and just above and to the left of the lines. On the inspection trip which ended in the crash, Bramer was flying the same route which he always flew, and the inspection was being performed in the usual manner. The Association's observer, however, was unable to go on the scheduled September flight because of other work commitments to the Association. When the Association observer advised Warren that he was not going to make the inspection trip, Warren told Bramer that he would serve as the Association's observer on the September flight. While the aircraft was paralleling the Association's lines, it encountered a downdraft and crashed within thirty feet of the Association's lines. Warren was killed, and Bramer was seriously injured.

The Pueblo Aircraft Service did not have Workmen's Compensation Insurance, and Bramer asserts that he was a constructive employee of the Association and that the Association's Workmen's Compensation Insurance provides coverage for his injuries. The statutory basis for his claim is found in C.R.S. 1963, 81-9-1, which provides, in pertinent part:

"*Lessor or contractor-out deemed employer — liability — recovery.* (1) Any person, company, or corporation operating or engaged in or conducting any business by leasing, or contracting out any part or all of the work thereof to any lessee, sublessee, contractor, or subcontractor, irrespective of the number of employees engaged in such work, shall be construed to be and be an employer as defined in this chapter, and shall be liable as provided in this chapter to pay compensation for injury or death resulting therefrom to said lessees, sublessees, contractors, and subcontractors and their employees, and such employer as in this section defined, before commencing said work, shall insure and shall keep insured his liability as provided in this chapter, and such lessee, sublessee, contractor, or subcontractor, as well as any

employee of such lessee, sublessee, contractor, or subcontractor, shall be deemed employees as defined in this chapter. Such employer shall be entitled to recover the cost of such insurance from said lessee, sublessee, contractor, or subcontractor, and may withhold and deduct the same from the contract price or any royalties or other money due, owing, or to become due said lessee, sublessee, contractor, or subcontractor."

We have approved the following test to determine whether a person qualifies as a "constructive" or a "statutory" employee:

*"Was the work part of the regular business of the constructive employer?* The cases hold that the statute covers all situations in which the subcontracted work is such part of his regular business operation as the statutory employer ordinarily would accomplish with his own employees. . . ." [Emphasis added.] *Pioneer Construction Co. v. Davis,* 152 Colo. 121, 381 P.2d 22 (1963).

Therefore, in order for Bramer's claim against the Association to be valid, two facts must be established: First, the inspection flight which was contracted-out by the Association must have been part of the regular business of the Association, and second, at the time he was injured, Bramer must have been flying in the course of his employment for the Association.

The Court of Appeals upheld the commission's finding that Bramer's flying was part of the Association's regular inspection program and, hence, was part of the regular business of the Association. We agree with the Court of Appeals.

The statutory intent behind C.R.S. 1963, 81-9-1, is to prevent employers from evading compensation coverage by contracting-out work instead of directly hiring the workmen. The employer's past practices are, therefore, relevant. 1A *Larson, Workmen's Compensation Law* § 49. The record shows that visual inspections from low-flying aircraft were a part of the regular operation of the Association's business.

Another finding of the commission which is in issue is that at the time of the crash Bramer was flying in the course of the Association's contracted-out work. The Association contends that since the contract did not authorize Warren to fly as an observer, the flight was not part of the Association's work. We cannot accept this argument.

Bramer was making precisely the same inspection flight he had made on other occasions with the Association's observer. He was flying above the power lines. The work was being done for the Association for the stated purpose of inspecting the Association's transmission and distribution system. The fact that Bramer's immediate employer and supervisor was incorrectly carrying out the terms of his contract cannot strip Bramer of the protection which the legislature intended the statute to afford. *Modlin v. Twin Falls Canal Co.,* 49 Idaho 199, 286 P. 612 (1930). *See Palmer v. Terteling,* 52 Idaho 170, 16 P.2d 221 (1932).

Even if Warren departed from the contractual provisions, his knowledge is not imputable to Bramer. Bramer's duty was to fly an observer over the transmission lines of the Association on a monthly basis. The fact that Warren may not have met the requirements of the contract or met the standards imposed by the company on its observers, does not cause Bramer to be outside of the scope of his employment. Bramer's duty was to serve as a pilot on inspection trips for the Association.

If a violation by a subcontractor of the terms of his contract could prevent the operation of the contracting-out statute, the statute's effectiveness in the statutory scheme would be lost. The Court of Appeals properly affirmed the commission's finding that Bramer was flying in the course of his employment for the Association.

Finally, the Association claims that the commission's findings are insufficiently supported, because part of the evidence was Bramer's testimony which related his conversation with Warren. The complained-of evidence was hearsay, but the commission's findings are proper. The record contains competent evidence that the flight was being carried

out in the same manner as other flights which Bramer had previously made for the Association when the Association's observer was present. The record also shows that the aircraft went down within thirty feet of the Association's lines. The commission is not bound to follow rigid rules of evidence in justly administering the Workmen's Compensation Act. 1969 Perm. Supp., C.R.S. 1963, 80-1-22. The hearsay testimony of Bramer, which was objected to by the Association was merely cumulative and only augmented competent evidence which established that Bramer was a "constructive" or "statutory" employee. In such circumstances, the commission should be upheld. *Williams v. New Amsterdam Casualty Co.,* 136 Colo. 458, 319 P.2d 1078 (1958). *See Johnson v. Industrial Commission,* 137 Colo. 591, 328 P.2d 384 (1958).

The decision of the Court of Appeals is affirmed.

MR. JUSTICE GROVES concurs in the result.

MR. JUSTICE KELLEY does not participate.