JUSTICE COATS,
dissenting.,
187 Because I disagree with the majority's construction of the controlling statutes and would, instead, largely affirm the judgment of the court of appeals, I respectfully dissent. Quite apart from the outcome of this particular case, However, I fear that the majority's myopic, and at various points in the analysis questionable, construction is likely to have *1230 unintended, and substantially deleterious, consequences for the protection of both workers and employers. I write separately, therefore, to identify what I consider to be the central flaw in the majority's reasoning and to emphasize the magnitude of its departure from the underlying phﬂosophy of the workers' compensatlon scheme.
1188 Unlike the majority, I believe the court of appeals was entirely correct in its assessment that "[the Act expressly contemplates that a person or entity in the chain of con- | tract or work on a construction contract may obtain a certificate of workers' compensation insurance to protect itself from the types of liabilities at issue here." However, unlike the court of appeals, which clearly considered its hands tied by our half-century-old opinion in Chevron Oil Co. v. Industrial Commission, 169 Colo. 336, 456 P.2d 735 (1969), and the structuring of Hoffs assignment of error to cireumvent its subsequent interpretation by other panels of that court, and therefore felt compelled to articulate its holding in a roundabout way, in terms of a combination of promissory estoppel principles and the public policy expressed in the Act, I believe this court should eut through the c1rcu1ty and simply hold that the certificate issued by Pinnacol made Alliance an insured employer within the contemplation of section 8-44-110, C.R.S. (2015), and that Pinnacol's failure to provide notice to Alliance as required by that statute therefore resulted in Pinnacol's continued coverage of the injured worker., I think it a relatively straightforward task to distinguish Chevron, which concerned a dispute among three different insurance companies over which would be liable to compensate for a worker's death and, as relevant here, merely stood for two peripheral propositions: first, that an administrative rule of the Industrial Commission could not modify the statutory scheme by adding a requirement to give prior notice of a cancellation to the, Commission itself, and second, that in any event, the insurer was not a proper party to complain about non-compliance with that administrative rule, the purpose of which was for the protection of the claimant entitled to compensation. In light of its subsequent broad interpretation by the intermediate appellate court, see First Comp Ins. v. Indus. Claim Appeals Office, 252 P.3d 1221 (Colo. App. 2011), I consider it the duty of this court to clarify this holding of Chevron by express limitation.
89 As an aside, I applaud the ma301'1ty for concluding, at least with regard to the workers' compensation statutes at issue here, that this court is not limited by any prior interpretation of the ICAO. I consider it counterproductive, however, to continue to mouth, as does the majority, confusing (if not deceptive) language to the effect that "courts nonetheless traditionally give deference to the Panel's reasonable interpretations of WCA provisions." Maj. op. 1 26. While no great harm can come of our showing deference, in the sense of a respectful consideration for the Commission's views, deference to the Panel's "reasonable interpretations" of WCA provisions implies actual acceptance of the Commission's choice among multiple reasonable interpretations of ambiguous WCA statutes, more in the vein of modern federal administrative jurisprudence. See generally John H. Reese, Bursting the Chevron Bubble: Clarifying the Scope of Judicial Review in Troubled Times, 73 Fordham L. Rev. 1103 (2004). As we have indicated elsewhere, we have never adopted the federal administrative model, and it remains the obligation of the judiciary to interpret the statutes of this jurisdiction. Mile High Cab, Inc. v. Colo. Pub. Utilities Comm'n, 2013 CO 26, ¶ 12, 302 P.3d 241, 245-46.
190 The court of appeals' emphasis on the role given by the General Assembly to certificates of insurance in the workers' compensation scheme derives-not only from the Act's specific provision for such certificates in the context of construction work but, more generally, from the fundamental compromise upon which workers' compensation was predicated, The statutory scheme was designed to grant an injured employee compensation from bis or her employer without regard to *1231 negligence, - and in return, the responsible employer would be granted immunity from common-law negligence lability. Frank M. Hall & Co. v. Newsom, 125 P.3d 444, 446 (Colo. 2005) (citing Finlay v. Storage Tech. Corp., 764 P.2d 62, 63 (Colo. 1988)). Our statutory scheme has also long provided an extra layer of protection for the employees of subcontractors by imposing, with some exceptions, employer liability not only on the subcontractors by whom these employees are directly employed, 'but also on the property owners or companies contracting out work to those subcontractors. Id. (citing San Isabel EleC. Ass'n, Inc. v. Bramer, 182 Colo. 15, 510 P.2d 438, 440 (1973)). The central mechanism through which this swift and certain compensation would become possible was to be statutorily required insurance, covering the la-bility statutorily unposed on each of these «employers.
191 The scheme therefore imposes a duty on such "statutory employers" to insure and keep insured this broad statutorily created . Hability, permitting them even to recover the costs of such insurance from their subcontracting employers. By the same token, however, the scheme makes clear that neither subcontractors with employees of their own, who maintain insurance coverage for their employees as required by statute, nor their employees themselves have a right of contribution against their statutory employers. Unless the scheme intends the enrichment of workers' compensation carriers by requiring that premiums be paid by statutory employers, notwithstanding existing adequate coverage by their subcontracting employers, and forcing subcontracting employers to bear not only the cost of their own coverage but also that of their statutory employers, it necessarily contemplates some means of establishing definitively whether the liability of persons or entities contracting. or subcontracting with statutory employers remains adequately covered.
192 With regard to construction work in particular, where the phenomenon of subcontracting employers is virtually universal, the statutory scheme actually imposes an administrative fine upon any person who contracts for the performance of construction work and fails to either provide coverage himself or require proof of coverage by every person with whom he has a direct contract. Because the statute expressly exonerates from this administrative fine any person who contracts for the performance of construction work and requires proof of coverage by those with whom he directly contracts, the majority concludes that proof of coverage has significance only in the context of administrative fines and plays no broader role with regard to the liability of statutory employers. By contrast, I believe proof of coverage provided by an insurance carrier to a statutory employer-a company or property owner who would be liable for injury or death to the employees of its contractors or subcontractors but for adequate coverage by those entities themselves-actually defines the scope of the carrier's statutory obligation to provide. notice before cancelling an insurance policy upon which that statutory employer's liability is contingent.
198 Because the effectlveness of the Workers Compensation Act depends on the maintenance of adequate insurance coverage against the liability of employers for injuries to their employees, the statute requires notice to "any employer insured by the carrier or Pinnacol Assurance" before it will be permitted to cancel that employer's coverage. See § 8-44-110. The majority accepts without reflection that in order to be an "employer insured by the carrier," an employer must actually be in privity of contract with the carrier, but this gloss is certainly not implied by the term "insured" itself, and there is every reason to believe it was not intended by the legislature, The statutory phrase "any employer insured by" clearly refers to any employer whose liability for injury to his employees is insured against, rather than simply an employer who has insured his personal well-being. Where the statutory scheme creates multiple levels of liability, in the form of statutorily designated: employers, all 'of whose liability for subcontractor employee injury is statutorily insured against by the policy of any subcontracting employer, the better reading of the phrase "any employer insured by the carrier or Pinnacol Assurance" includes all of those statutory employers to whom the insurer has certified coverage against their statutorily imposed liability.
*1232 T94 Apart from the majority's failure to 'give any serious consideration to the meaning of the notice of cancellation provision, much less to examine it in light of the policy expressed by the scheme as a whole, I believe the majority's cramped reading of the role that certificates or other proof of insurance play in the workers' compensation scheme derives in part from its misunderstanding of the relationship between sections 8-41-402 and 404, C.R.S. (2015). Sections 401 and 402 treat of persons, companies, or corporations that lease or contract out any part of the work of their business, or that own any real property or improvements thereon and contract out any work done on that property. Section 404 deals with contracting for a particular kind of work-work on construction sites. Because a person who contracts for the performance of construction work on a construction site can (and almost certainly will) be a person, company, or corporation governed by section 401 or 402, the majority's suggestion that the administrative fine imposed by section 404 is somehow unrelated to the liability imposed on statutory employers by section 402 is not simply too mechanical, but in fact untenable.
195 From section 404's provision for a fine in the construction site context, and its express exoneration from that fine upon obtaining proof of coverage by a direct employer, the majority concludes not only that proof of coverage serves no purpose other than the exoneration of an employer from administrative fines, but also that the statutory scheme intends for separate coverage to be required of statutory employers, even in the face of proof of adequate existing coverage by the direct employer. Not only does this interpretation (or more accurately imputation) imply a legislative intent to bestow a windfall on insurance carriers, in the form of double premiums for single coverage, but in addition, it effectively thwarts the fundamental goal of the scheme-to ensure coverage for all injured employees, in lieu of obliging them to seek recovery from uninsured employers. To construe the phrase in section 8-44-110, "shall notify any employer insured by the carrier or Pinnacol Assurance," as including every employer to whom the insurer has provided proof that the employer's statutory liability is insured against, would guarantee that each such statutory employer is given an opportunity to exercise its statutory right to renew coverage and pass on the cost, if it chooses, to the contractor, subcontractor, or person with whom it contracts.
¶96 Because our opinion in Chevron actually involved the impact of an administrative rule on the statutory scheme rather than construction of a cancellation provision of the Act, first appearing in 1989, see ch. 69, see. 1, § 8-44-114, 1989 Colo. Sess. Laws 417, 418, I do not believe our holding in that case presents any impediment to this construction. To the extent it could be read to adversely affect the standing of a statutory employer to challenge the cancellation of a policy upon which its liability is contingent, I would expressly limit or overturn it. To construe the Workers Compensation Act so narrowly as to relieve Pinnacol of any obligation to notify Alliance of its intent to cancel, after certifying to Alliance sufficient coverage to protect it from claims of injury by its statutory employees, flies in the face of the fundamental compromise upon which the Act was predicated. While I. therefore agree with the court of appeals' understanding of the policy supporting the Act, because I believe that in the absence of notice to Alliance, the coverage by Pinnacol remained in existence, I see no need for a remand concerning reliance by Hoff.
197 I therefore respectfully dissent.
I am authorized to state that CHIEF JUSTICE RICE and JUSTICE EID join in this dissent.