## Williams v. Reinhart

*George Hardy Rowley*, for claimant.
*Michael Halliday*, for defendant.

McKay, J., June 27, 1958.—Defendant has appealed from an order of the workmen's compensation board affirming a referee's award of compensation to claimant for the loss of the use of three fingers of his right hand in a sawmill accident on September 26, 1955.

The only issue is whether defendant was claimant's employer at the time the accident occurred. There is also very little dispute as to the facts.

Since both the referee and the board have found that defendant was claimant's employer, our sole responsibility in this appeal is to determine whether that finding is supported by competent evidence: Johnson v. Valvoline Oil Co., 131 Pa. Superior Ct. 266.

Further, in approaching our task, we are reminded that the facts must be read in the light most favorable to claimant: Zbirowski v. John T. Lewis & Bros. Co., 130 Pa. Superior Ct. 222.

The facts, as to claimant's employment, so viewed, are as follows:

In 1955, defendant was engaged in the business of buying timber and sawing it into lumber. For this purpose he owned a sawmill near Emlenton, in Venango County.

R. C. Johnson, an experienced sawyer, was originally hired by defendant to saw logs at a fixed rate of pay per 1,000 feet of timber sawed. His son, known as "Red" Johnson, was hired as a cutter, also on a piece rate basis.

Later, because defendant lived a considerable distance from Emlenton, and did not want to be bothered with paying the men, he and R. C. Johnson changed their working arrangement to one where the latter was to run the sawmill "as if it was his own" and be paid $21 per 1,000 feet. From this total sum he was to pay all labor, with the privilege of using his son "Red" to cut, either alone or with another cutter whom "Red" might hire if he desired. Defendant indicated the timber to be cut. Thereafter defendant only came to the mill when he wanted a load of timber.

Defendant later sent out two skidders whom R. C. Johnson hired.

"Red" Johnson hired claimant to help him cut timber and paid him from what he himself received from his father for cutting.

Each worker got a share of the $21 per 1,000 according to an agreed rate per 1,000 feet for the type of work he did. For example, the cutters received $6 per 1,000, the skidders $4.50, and the "off-bearers" $3. Later claimant helped "Red" place 4 x 4's for sawing,

for which he received $1.40 per 1,000. It was while he was doing this work that he was injured, the accumulated pile of 4 x 4's falling on his hand and forcing it into the saw.

Reinhart admitted that under his arrangement with R. C. Johnson he had the right to interfere and control the use of the sawmill if he thought necessary and that he told Johnson to do the hiring and firing. He also testified that if Johnson had not paid the men, he would have expected them to tell him, Reinhart, about it.

Johnson testified that he was hired as an employe and was subject to the control of Reinhart. There was no evidence that Johnson was to be allowed to finish any particular quantity of timber or that he himself could not be fired at any time by Reinhart.

From the above facts, it would appear to be a warrantable inference that while claimant was hired and paid by Johnson's son, "Red", claimant was actually an employe of defendant who owned and operated the business and used this unique piecework method of paying his men through his manager, R. C. Johnson.

The vital test in determining whether a workman is a servant of the person who engages him to work is whether he is subject to the latter's control, or right to control, not only with regard to the work done, but also with regard to the manner of performance: Venezia v. Phila. Electric Company, 317 Pa. 557; Thomas v. Bache, 351 Pa. 220.

Here defendant had that right of control over both R. C. Johnson and claimant. Hence, he was their employer within the meaning of The Workmen's Compensation Act of June 2, 1915, P. L. 736.

Other evidence confirms this conclusion. For example, after claimant was injured, defendant called on him at the hospital and told him not to sign any

papers, and that he, defendant, would straighten everything out. Defendant thereafter paid $200 on account of claimant's medical and hospital expenses.

Accordingly, after carefully reviewing the record, we are of the opinion that there is sufficient competent evidence to sustain the findings of the referee and the board and that the award must therefore be affirmed.

*Order*

Now, June 27, 1958, it is ordered that the award of the referee in the above entitled case be affirmed and that judgment be entered in favor of plaintiff and against defendant in the amount of $1,858.50, which includes the total amount of compensation payable, $1,560, and medical and hospital expenses as ordered in the amount of $298.50.