**Deborah M. FINLAY, Petitioner,**

v.

**STORAGE TECHNOLOGY
CORPORATION,
Respondent.**

**No. 87SC93.**

Supreme Court of Colorado,
En Banc.

Nov. 7, 1988.

Rehearing Denied Nov. 28, 1988.

Miller, Hale & Harrison, David B. Harrison, Boulder, for petitioner.

The Law Firm of Thomas J. de Marino, Bonner E. Templeton, Denver, for respondent.

LOHR, Justice.

The plaintiff, Deborah M. Finlay (Finlay), brought this negligence action against the defendant, Storage Technology Corporation (Storage Technology), seeking damages for injuries sustained while providing janitorial services to Storage Technology during the course of her employment with Allied Maintenance Corporation (Allied). After a non-jury trial, the trial court entered judgment for defendant Storage Technology, concluding that Storage Technology was a "statutory employer" of Finlay under the Workmen's Compensation Act of Colorado and therefore was immune from common-law negligence liability. The Colorado

Court of Appeals affirmed in *Finlay v. Storage Technology Corp.*, 733 P.2d 322 (Colo.App.1986). We agree that Storage Technology was Finlay's statutory employer and that the Workmen's Compensation Act of Colorado, Articles 40 to 54 of Title 8, 3B C.R.S. (1986) (workers' compensation act), provides the exclusive remedy for her injuries. Therefore, we affirm the judgment for the defendant.

## I.

Storage Technology is a manufacturer of computer peripheral equipment involving data retrieval. Allied contracted to provide janitorial services to Storage Technology.[1] On March 14, 1983, Finlay was employed by Allied and worked at the Storage Technology plant in Louisville, Colorado, as a janitor. On that day she was cleaning a restroom at Storage Technology when a tile fell from the ceiling and struck her, forcing her wrist into a sink and causing permanent injuries. Finlay received workers' compensation benefits under coverage provided by Allied's insurance carrier.

Finlay sued Storage Technology for negligence. Storage Technology answered and asserted as an affirmative defense that it was the statutory employer of Finlay under section 8–48–101(1), 3B C.R.S. (1986), and was therefore immune from common-law negligence liability under section 8–42–102, 3B C.R.S. (1986). The case was tried to the court. Finding that Allied's janitorial services were a routine and regular part of Storage Technology's total business enterprise, the trial court held that Storage Technology was Finlay's statutory employer within the meaning of the workers' compensation act.

Finlay appealed and a majority of the court of appeals panel affirmed the trial court, noting that the general test for determining whether a company has statutory employer status under the workers' compensation act is whether the work contracted out is part of the "regular business operation" of the constructive employer. The court of appeals held that the fact that Allied's janitorial services were "to be provided on a routine and regular basis indicates they are part of the regular business operation [of Storage Technology]." *Finlay v. Storage Technology Corp.*, 733 P.2d at 324.[2] We granted Finlay's petition for certiorari to determine whether the court of appeals applied the correct standard in evaluating whether Storage Technology was Finlay's statutory employer.

## II.

### A.

The primary purpose of the workers' compensation act is to provide a remedy for job-related injuries, without regard to fault. *See, e.g., Travelers Ins. Co. v. Savio*, 706 P.2d 1258, 1263–64 (Colo.1985); *Frohlick Crane Service, Inc. v. Mack*, 182 Colo. 34, 38, 510 P.2d 891, 893 (1973). The statutory scheme grants an injured employee compensation from the employer without regard to negligence and, in return, the responsible employer is granted immunity from common-law negligence liability. *Buzard v. Super Walls, Inc.*, 681 P.2d 520, 522 (Colo.1984). To be afforded this immunity, an employer must be a "statutory employer" as contemplated by the workers' compensation act. *Travelers Ins. Co.*, 706 P.2d at 1264 ("if either the injury or a

1. The contract between Storage Technology and Allied specifically provided that Allied would perform typical janitorial duties such as vacuuming carpets, sanitizing drinking fountains, emptying ashtrays and waste receptacles, dusting furniture, and cleaning restrooms.

2. Judge Criswell would have reversed the trial court. His dissent points out that Colorado courts have traditionally distinguished between "subcontracted activities which are directly related to the alleged employer's primary business purpose and other subcontracted activities which, while necessary to the accomplishment

of that primary purpose, are, nevertheless, merely ancillary or incidental thereto." *Finlay v. Storage Technology Corp.*, 733 P.2d at 324–25. (Criswell, J., dissenting). Because Allied's janitorial services did not "contribute directly" to Storage Technology's primary business purpose of manufacturing computer equipment, Judge Criswell concluded that Finlay's activities were not "a part of the 'work' of [Storage Technology's] 'business' within the meaning of § 8–48–101(1), but were mere incidental or ancillary activities." *Id.* at 325.

party's status falls outside the ambit of the [workers' compensation act], then the liability and exclusivity provisions of the [a]ct are inapplicable"). Although a given company might not be a claimant's employer as understood in the ordinary nomenclature of the common law, it nevertheless might be a statutory employer for workers' compensation coverage and immunity purposes. *O'Quinn v. Walt Disney Prod.,* 177 Colo. 190, 194–95, 493 P.2d 344, 346 (1972); *Snyder v. Industrial Comm'n,* 138 Colo. 523, 526, 335 P.2d 543, 545 (1959).

Storage Technology contends that it is Finlay's statutory employer under section 8–48–101, 3B C.R.S. (1986):

(1) Any person, company, or corporation operating or engaged in or conducting any business by leasing or contracting out any part or all of the work thereof to any lessee, sublessee, contractor, or subcontractor, irrespective of the number of employees engaged in such work, shall be construed to be an employer as defined in articles 40 to 54 of this title and shall be liable as provided in said articles to pay compensation for injury or death resulting therefrom to said lessees, sublessees, contractors, and subcontractors and their employees or employees' dependents. The employer, before commencing said work, shall insure and keep insured his liability as provided in said articles, and such lessee, sublessee, contractor, or subcontractor, as well as any employee thereof, shall be deemed employees as defined in said articles.…

(2) If said lessee, sublessee, contractor, or subcontractor is himself an employer in the doing of such work and, before commencing such work, insures and keeps insured his liability for compensation as provided in articles 40 to 54 of this title, neither said lessee, sublessee, contractor, or subcontractor, its employees, or its insurer shall have any right of contribution or action of any kind, including actions under section 8–52–108, against the person, company, or corporation operating or engaged in or conducting any business by leasing or contracting out any part or all of the work there-

of, or against its employees, servants, or agents.

Subsection 8–48–101(1) makes general contractors ultimately responsible for injuries to employees of subcontractors. *Edwards v. Price,* 191 Colo. 46, 52, 550 P.2d 856, 860 (1976), *appeal dismissed,* 429 U.S. 1056, 97 S.Ct. 778, 50 L.Ed.2d 773 (1977). Its purpose is to prevent employers from avoiding responsibility under the workers' compensation act by contracting out their regular work to uninsured independent contractors. *Hefley v. Morales,* 197 Colo. 523, 526, 595 P.2d 233, 235 (1979); *Frohlick,* 182 Colo. at 38, 510 P.2d at 893. Of course, section 8–48–101 was not intended to permit double recovery. Under subsection 8–48–101(2), if a subcontractor "has obtained insurance [its employee] cannot reach 'upstream' to [the general contractor] to establish tort liability; [the general contractor is] immune from suit as any insured employer would be." *Buzard,* 681 P.2d at 523.

By its terms, subsection 8–48–101(1) applies only to companies conducting "business" by contracting out "any part or all of the work thereof." Thus, the ultimate issue in this case is whether Storage Technology was "contracting out any part or all of [its] work" to Allied. The resolution of this issue requires us to consider the breadth of the terms "business" and "the work thereof" as contemplated by section 8–48–101(1).

We have previously described the test for whether statutory employer status exists under section 8–48–101 as whether the work contracted out is part of the "regular business" of the alleged employer. *San Isabel Elec. Ass'n v. Bramer,* 182 Colo. 15, 19, 510 P.2d 438, 440 (1973); *Pioneer Construction Co. v. Davis,* 152 Colo. 121, 125, 381 P.2d 22, 24 (1963). We have not, however, definitively stated whether the "regular business" test is limited to a consideration of the primary business of the alleged employer or encompasses broader aspects of the alleged employer's total business operation.

Finlay urges us to adopt a narrow construction of the "regular business" test. Such a construction would result in statu-

tory responsibility and immunity only if the contracted activities directly relate to the alleged employer's *primary* business activities. Finlay further argues that applying a narrow construction of the "regular business" test to this case leads to the conclusion that janitorial services are ancillary to Storage Technology's primary business of manufacturing and marketing computer equipment. Accepting Finlay's argument would require us to hold that Storage Technology was not her statutory employer, leaving her free to pursue her common-law negligence claim.

Storage Technology, on the other hand, asserts that the court of appeals applied the appropriate standard by referring to the alleged employer's "total business operation" and "consider[ing] the elements of routineness, regularity, and the importance of the contracted service to the regular business" of the alleged employer. Storage Technology further argues that because Allied's janitorial services were a regularly needed part of Storage Technology's total business operation, Storage Technology qualifies as Finlay's statutory employer.

### B.

In support of her argument for a narrow construction of the "regular business" test, Finlay relies primarily on three early Colorado Supreme Court cases, *Pioneer Construction Co. v. Davis*, 152 Colo. 121, 381 P.2d 22 (1963); *Meyer v. Lakewood Country Club*, 122 Colo. 110, 220 P.2d 371 (1950); and *American Radiator Co. v. Franzen*, 81 Colo. 161, 254 P. 160 (1927). In *American Radiator*, we held that an employee of a window cleaning company that cleaned windows twice a month for American Radiator, a manufacturer of heating plants, was not American Radiator's statutory employee and therefore could not claim workers' compensation benefits from American Radiator. We defined the "business" of American Radiator as follows:

> The business of a person, as the word is [used in the statutory predecessor of section 8-48-101(1)], is that calling which he pursues for livelihood or gain. Webster. Washing windows is not a part of the business of manufacturing and selling heating systems.

*Id.* at 162, 254 P. at 160.

This court relied on *American Radiator* in *Meyer v. Lakewood Country Club*, 122 Colo. 110, 220 P.2d 371 (1950). In *Meyer*, a laborer was electrocuted while digging in preparation for the installation of manholes in an existing sewer line for the Lakewood Country Club. He was found to be ineligible for workers' compensation benefits because Lakewood Country Club was not his statutory employer. We noted that although the sewer line was necessary for the full enjoyment of some of the club's facilities, the decedent was an independent contractor doing work on the property of the club and not as part of the business of the club. *Id.* at 112, 220 P.2d at 372. In reaching that conclusion, we considered as important factors in evaluating the club's statutory employer status the club's lack of control over the work performed, the absence of a deadline for completion, and the fact that the work performed was "special." *Id.* at 112–13, 220 P.2d at 372.

This court again revisited the "regular business" test in *Pioneer Construction Co. v. Davis*, 152 Colo. 121, 381 P.2d 22 (1963). In that case, Pioneer Construction Company, a highway construction business which rented trucks that were owned, operated, and maintained by others, was alleged to be the statutory employer of a truck driver who had been provided to Pioneer by the owner of a truck that Pioneer had rented. *Id.* at 123, 381 P.2d at 23. The driver sustained fatal injuries while repairing the rented truck. *Id.* at 124, 381 P.2d at 24. The driver was performing this work by agreement with the truck owner and was working on a weekend and on his own time. *Id.* at 124, 381 P.2d at 23–24. We held that the driver's accident was not compensable by Pioneer Construction Company under the workers' compensation laws because Pioneer was not his statutory employer. *Id.* at 126, 381 P.2d at 24–25. In so holding, we noted that although Pioneer was the driver's statutory employer

during the time he was hauling materials for use in Pioneer's business of constructing roads, the driver acted outside his capacity as a statutory employee when he repaired trucks on his own time, as "Pioneer was not in the business of repairing trucks and was not carrying on or conducting any such business by a subcontract or leasing operation." *Id.* at 126, 381 P.2d at 24. Ultimately, we stated the "regular business" test as follows:

> Was the work part of the regular business of the constructive employer? The cases hold that the statute covers all situations in which the subcontracted work is such part of his regular business operation as the *statutory employer ordinarily would accomplish with his own employees.*

*Id.* at 125, 381 P.2d at 24 (emphasis added).

Finlay also refers us to *Wooten v. Youthcraft Manufacturing Co.*, 312 S.W. 2d 1 (Mo.1958), in which the Missouri Supreme Court held that an employee of a cleaning company that contracted to provide routine janitorial services to the defendant, a manufacturing company, was not a statutory employee of the manufacturing company. The court specifically found that the janitorial services were not an "essential part of [the manufacturing company's] trade or business." 312 S.W.2d at 3. *Wooten,* however, has not escaped criticism. *See* 1C A. Larsen, *Workmen's Compensation* § 49.16(f), at 9–74 (1986). Professor Larsen observes that the *Wooten* decision, which would seem "grotesquely illiberal if an affirmative grant of compensation were at stake, was produced by an 'upside-down' case—that is, a case in which the accident was held not compensable in order to permit a damage suit to stand." *Id.*

## C.

■ We believe that the narrow standard urged by Finlay and concededly applied in our early case of *American Radiator* has evolved to accommodate more fully the purposes of the workers' compensation act. More recent Colorado cases have applied the broader view, first articulated in *Pioneer Construction Co.*, that the "regular business" test is satisfied where the disputed services are such a regular part of the statutory employer's business that absent the contractor's services, they would of necessity be provided by the employer's own employees. *See, e.g., San Isabel Elec. Ass'n v. Bramer,* 182 Colo. 15, 19, 510 P.2d 438, 440 (1973) (employee of aircraft service that made aerial inspection trips of electric association's transmission and distribution lines under contract with electric association held to be statutory employee of electric association); *Wagner v. Coors Energy Co.,* 685 P.2d 1380, 1381 (Colo.App. 1984) (no statutory immunity from tort liability where alleged statutory employer failed to demonstrate that absent the contractor's services, the work would of necessity be provided by the employer's employees); *Campbell v. Black Mountain Spruce, Inc.,* 677 P.2d 379, 381 (Colo.App. 1983) (nature of lumber producer's business was such that absent contracted services of planing mill, the services performed by employee of planing mill would have to be accomplished by lumber producer's own employees); *Melody Homes, Inc. v. Lay,* 44 Colo.App. 49, 50–51, 610 P.2d 1081, 1082–83 (1980) (security service was such "an integral part of the operation of a construction site" that "but for hiring of the independent contractor, the service would of necessity be provided by the employer's own employees.").

■ From these cases there emerges a broader standard that takes into account the constructive employer's total business operation, including the elements of routineness, regularity, and the importance of the contracted service to the regular business of the employer. This broader standard ensures that an important purpose of section 8–48–101(1)—that of making general contractors ultimately responsible for injuries to employees of subcontractors—will be fulfilled. That purpose, as well as the more general purpose of the workers' compensation act to compensate injured employees for job-related injuries regardless of fault, would be frustrated were we to revert to the narrow standard applied in

*American Radiator,* and focus exclusively on whether the subcontracted activity *directly* relates to the alleged employer's primary business. Such a narrow interpretation of the "regular business" test could potentially bar the recovery of an injured worker who is unable to show negligence and whose primary employer is uninsured and financially irresponsible. This result would clearly contravene the "long-recognized rule that the [workers' compensation act] is to be liberally construed to accomplish its humanitarian purpose of assisting injured workers and their families." *Garner v. Vanadium Corp.,* 194 Colo. 358, 360, 572 P.2d 1205, 1206–07 (1977); *see also James v. Irrigation Motor and Pump Co.,* 180 Colo. 195, 199, 503 P.2d 1025, 1028 (1972).

To the extent that the broad understanding of the "regular business" test described above conflicts with the holdings or language of any of our earlier decisions in this area, we shall no longer follow those decisions.[3] However, our opinion in *Pioneer Construction Co.* demonstrates that we have previously understood the "reasonable business" test to require inquiry into the importance of the disputed service to the alleged employer's total business operation. That importance can be demonstrated by showing that in the absence of a subcontractor's services, the contractor would find it necessary to accomplish the work by use of the contractor's own employees rather than to forego the performance of the work. *Pioneer Construction Co.,* 152 Colo. at 125, 381 P.2d at 24; *see*

*also Melody Homes, Inc. v. Lay,* 44 Colo. App. at 50–51, 610 P.2d at 1082 ("The issue of whether an employee would ordinarily accomplish the work with his own employees is simply a corollary to the inquiry 'is the work performed part of the employer's regular business,' and is not to be determined solely by proof of the employment practices of similar businesses.").

In summary, we hold that the test for whether an alleged employer is a "statutory employer" under section 8–48–101 of the workers' compensation act is whether the work contracted out is part of the employer's "regular business" as defined by its total business operation. In applying this test, courts should consider the elements of routineness, regularity, and the importance of the contracted service to the regular business of the employer.[4]

### III.

Applying the foregoing principles to this case, we conclude that the cleaning of Storage Technology's business premises was an integral part of the total business operation of the Storage Technology business facility. The trial court found that Allied's daily cleaning services were a routine and regular part of Storage Technology's total business enterprise as a manufacturer of computer peripheral equipment. We agree. We do not think it significant that the cleaning responsibilities of Allied's employees consisted primarily of routine janitorial services that were not tailored to any of Storage Technology's unique clean-

3. As to the cases upon which Finlay principally relies, the test adopted here directly conflicts only with the standard and holding of *American Radiator.* Our holdings in *Pioneer Construction Co.* and *Meyer v. Lakewood Country Club* are fully consistent with the test set forth in this opinion in that the disputed services in *Meyer v. Lakewood Country Club* were not sufficiently routine and regular to satisfy the test, and the disputed services in *Pioneer Construction Co.* were not part of the employer's business at all.

4. In applying the regular business test, Colorado courts have occasionally explored the degree of control the alleged statutory employer retains over the employee. *See Meyer v. Lakewood Country Club,* 122 Colo. 110, 112, 220 P.2d 371, 372 (1950) (noting as one factor among many

that the alleged statutory employer "retained no control whatever over the work that was to be performed."); *Campbell v. Black Mountain Spruce, Inc.,* 677 P.2d 379, 381 (Colo.App.1983) (including degree of control retained by alleged statutory employer among relevant factors in determining whether the relationship of statutory employment exists). Employer control may be probative of the importance of the contracted services to the alleged employer. However, the statutory employment relationship is not predicated on a finding of employer control; rather, a showing that the alleged statutory employer maintains control over the employee represents only one method of demonstrating the factor of importance.

ing needs.[5] Storage Technology depended on the regular and thorough performance of Allied's janitorial services, as demonstrated by its willingness to contract for those services to be performed on a daily basis. The record adequately supports an inference that the janitorial services were of such importance that were it not for Allied's services, Storage Technology would have found it necessary to obtain these services by other means including, if need be, the training and utilization of its own employees to accomplish the cleaning tasks.

Accordingly, we affirm the judgment of the court of appeals.

KIRSHBAUM, J., does not participate.

5. Storage Technology's business required it to maintain an unusually clean environment. In particular, the buildings at Storage Technology were constructed with the following features: (1) structural members were sealed with acrylic to eliminate concrete dust, (2) vinyl asbestos floors were installed in manufacturing areas, (3) dock areas were screened from manufacturing areas, (4) positive air pressure was maintained, (5) air intake systems had higher than normal filtration levels, (6) windows did not open. These precautions were necessary to prevent airborne dirt and dust from damaging the delicate magnetic and electric components of Storage Technology's computer equipment.