2015 COA 21

**Ryan MONELL, Plaintiff–Appellant,**

v.

**CHEROKEE RIVER, INC.,
Defendant–Appellee.**

**Court of Appeals No. 13CA2230**

Colorado Court of Appeals,
Div. V.

Announced February 26, 2015

Benson & Case, LLP, John Case, Kari Jones, Denver, Colorado, for Plaintiff–Appellant

Stuart D. Morse & Associates, LLC, Stuart D. Morse, Matthew J. Bayma, Greenwood Village, Colorado, for Defendant–Appellee

Opinion by JUDGE ASHBY

¶ 1 Plaintiff, Ryan Monell, appeals from the district court's orders (1) dismissing his negligence claims against defendant, Cherokee River, Inc. (CRI), for failure to state a claim pursuant to C.R.C.P. 12(b)(5); and (2) awarding CRI attorney fees for litigating the merits and its motion for fees and costs. We conclude that when the scope of an entity's contracted business and work is clear, specifically applying the "regular business" test is unnecessary, and we therefore affirm the court's dismissal of the negligence claims. We also conclude that the court's fee award for litigating the merits was proper, but the court should not have awarded fees for litigating the fees and costs motion. Accordingly, we affirm in part, reverse in part, and remand with directions.

## I. Background

¶ 2 As alleged in Monell's first amended complaint, the operative pleading, CRI was hired to construct a steel building on a landowner's property. CRI subcontracted part of the construction of the building to N.J. Liming, which employed Monell. While Monell was working on constructing the building in close proximity to high voltage overhead electrical lines, electricity arced from the lines and electrocuted him, causing severe burns, shock, and temporary stoppage of his heart.

¶ 3 Monell sought and received workers' compensation benefits for his injury from N.J. Liming. He then filed suit against the landowner, the companies that furnished the electricity and maintained the electrical lines, and CRI. Monell asserted two negligence claims against CRI and various other torts against the other defendants.

¶ 4 CRI moved to dismiss the claims against it for failure to state a claim, arguing that it was immune from any tort liability because it was Monell's statutory employer under section 8–41–401, C.R.S.2014 (statutory employer immune from tort liability for workplace injury if the injured worker collected workers' compensation benefits for the injury). The district court agreed and dismissed the negligence claims against CRI. The claims against the other defendants were also dismissed.

¶ 5 CRI then moved for attorney fees and costs, requesting fees under section 13–17–201, C.R.S.2014 (mandating attorney fee award when a defendant obtains dismissal under C.R.C.P. 12(b)). The court awarded CRI fees and costs related to defending the tort action and litigating the fees and costs motion.

¶ 6 Monell appeals the dismissal of his claims against CRI and the fee award.

## II. Motion to Dismiss

¶ 7 Monell argues that the court erred by dismissing his negligence claims against CRI because the complaint did not establish that CRI was his statutory employer and therefore immune from tort liability. We review de novo, *Bly v. Story*, 241 P.3d 529, 533 (Colo.2010), and disagree.

¶ 8 When evaluating a motion to dismiss for failure to state a claim, a court, with certain exceptions not applicable here, may consider only those matters stated in the complaint. *Coors Brewing Co. v. Floyd*, 978 P.2d 663, 665 (Colo.1999). A court may grant such a motion if, accepting the allegations as true and viewing them in the light most favorable to the plaintiff, the facts as alleged cannot, as a matter of law, support a claim for relief. *Bly*, 241 P.3d at 533.

### A. Applying the Regular Business Test was Unnecessary Here

¶ 9 Monell first argues that the court erred by making a statutory employer determination without specifically applying the regular business test as set forth in *Finlay v. Storage Tech. Corp.*, 764 P.2d 62 (Colo.1989). We conclude that because the complaint established that CRI qualified as Monell's statutory employer under section 8–41–401(1)(a)(I), the court was not required to specifically apply the regular business test in these circumstances.

¶ 10 Colorado's workers' compensation statute immunizes employers from tort liability for a workplace injury if the injured worker collects workers' compensation benefits. *See* § 8–41–401(1), (2); *Finlay*, 764 P.2d at 63. This immunity attaches not only to the employer through which the worker obtained workers' compensation benefits, but also to any other employer that qualifies as a statutory employer. *See* § 8–41–401(1), (2); *Finlay*, 764 P.2d at 63.

¶ 11 Section 8–41–401(1)(a) defines a worker's statutory employer as any company "engaged in or conducting any business by leasing or contracting out any part or all of the work thereof" to a subcontractor that employs the worker. Consequently, whether an entity is a statutory employer depends on whether the subcontractor's worker was injured while engaged in activity that was part of the "business" or "work thereof" that the entity contracted out to the subcontractor.

¶ 12 The scope of a potential statutory employer's contracted business and work can be unclear. When it is, determining whether an employee's injury occurred while performing work that was within that scope may be difficult. Before our supreme court's opinion in *Finlay*, courts had attempted to define the scope of an employer's contracted business and work by applying the "regular business" test. This test asked "whether the work contracted out [was] part of the 'regular business' of the alleged employer." *Finlay*, 764 P.2d at 64. In *Finlay*, the supreme court refined the test to "whether the work contracted out [was] part of the employer's 'regular business' as defined by its total business operation." *Id.* at 67. The supreme court also instructed that when conducting this inquiry, "courts should consider the elements of routineness, regularity, and the importance of the contracted service to the regular business of the employer." *Id.*

¶ 13 However, nothing in *Finlay* changed the purpose of the regular business

test: to determine whether a particular activity was within the scope of a potential statutory employer's business and work that it contracted out to a subcontractor. Because the regular business test is a tool that courts use to define the scope of an entity's contracted "business" and "work" when that scope is *unclear*, the regular business test is superfluous when the scope of an entity's contracted business and work *is* clear (if it is equally clear that a particular activity falls within that scope). *See Cowger v. Henderson Heavy Haul Trucking Inc.*, 179 P.3d 116, 119 (Colo.App.2007) (The regular business test "is a means for determining whether a business is a statutory employer ... in accordance with[ ] § 8–41–401(1)(a)."). Here, because the scope of the contracted business was clear and the work Monell was doing when he was injured was clearly within that scope, the district court was not required to apply the regular business test.

¶ 14 Monell's amended complaint alleged that (1) CRI was hired to "manufacture and erect a steel building ("Building")"; (2) "N.J. Liming was a subcontractor of the defendant [CRI] in the construction of the Building"; and (3) Monell was working for N.J. Liming and was injured "while ... working on the construction of the Building." Applying the regular business test here was unnecessary because the amended complaint itself alleged that Monell was injured while doing an activity that was within the scope of CRI's business and work. It alleged that constructing the building was (1) what CRI was hired to do, (2) what CRI subcontracted out to N.J. Liming, and (3) what Monell was doing when he was injured while working for N.J. Liming.

¶ 15 Monell's reliance on *Cowger* is misplaced and does not alter our conclusion. We agree with Monell that, pursuant to *Cowger* and *Finlay*, to qualify for statutory employer immunity both sections 8–41–401(1)(a) (defining statutory employer) and –401(2) (statutory employer immune if subcontractor maintains workers' compensation insurance) must be satisfied. But, as explained above, the regular business test is not the only way to satisfy the requirements of section 8–41–401(1)(a). And we conclude that the allega-

tions in the first amended complaint establish that CRI met the requirements of both sections 8–41–401(1)(a) and –401(2).

¶ 16 Because the facts, when viewed in the light most favorable to Monell, establish that he was injured while doing the same work that CRI was hired to do and subcontracted out to N.J. Liming, the court properly concluded that CRI was Monell's statutory employer and therefore immune to tort liability for his injury.

### B. Other Arguments

¶ 17 Monell argues that we should reverse the court's dismissal order for two additional reasons. First, he argues that section 8–41401 and statutory employer immunity are inapplicable here because he was an independent contractor, not an employee, of N.J. Liming. As CRI points out and Monell concedes in his reply brief, Monell has raised this issue for the first time on appeal. Therefore, we do not address it. *See JW Constr. Co., Inc. v. Elliott*, 253 P.3d 1265, 1271 (Colo.App.2011).

¶ 18 Second, he argues that the court erred by citing to his original complaint in the dismissal order, not the first amended complaint (the operative pleading). However, we have conducted our review based on the facts as alleged in the first amended complaint and have concluded that dismissal was proper. *See Blood v. Qwest Servs. Corp.*, 224 P.3d 301, 329 (Colo.App.2009) (appellate court can affirm on any ground supported by the record).

### III. Attorney Fees

¶ 19 Section 13–17–201 provides that when a tort claim is dismissed pursuant to a defendant's C.R.C.P. 12(b) motion, the "defendant shall have judgment for his reasonable attorney fees in defending the action." Because the court properly dismissed Monell's claims pursuant to C.R.C.P. 12(b)(5), CRI was entitled to attorney fees. Even so, Monell argues that the court's fee award was erroneous for other reasons.

## A. Third Party Payment of Fees

¶ 20 Monell emphasizes that section 13–17–201 states that the *"defendant* shall have judgment for *his* reasonable attorney fees." § 13–17–201 (emphasis added). According to Monell, because CRI's insurer, not CRI, paid the attorney fees, CRI has incurred no attorney fees that he could pay and CRI's insurer is ineligible for a fee award because it is not a defendant in the case. We review the interpretation of the statute de novo, *see Fischbach v. Holzberlein,* 215 P.3d 407, 409 (Colo.App.2009), and disagree with Monell.

¶ 21 We must read a statute to give effect to its purpose and intent, and we must avoid interpretations that nullify that purpose and intent. *See Hale v. Erickson,* 23 P.3d 1255, 1257 (Colo.App.2001). The purpose of section 13–17–201 is to "discourage the institution or maintenance of unnecessary tort claims." *Kennedy v. King Soopers Inc.,* 148 P.3d 385, 388 (Colo.App.2006). Whether a plaintiff is penalized by having to pay a fee award to the defendant or the third party who actually paid the fees is irrelevant to the statute's purpose. *See Hale,* 23 P.3d at 1257 (holding that a defendant whose costs were paid by a third party may be awarded costs pursuant to a cost award statute intended to penalize a non-settling plaintiff because whether the defendant or a third party paid those costs is irrelevant to the statute's purpose).

¶ 22 Moreover, Monell's interpretation of the statute would encourage, not discourage, plaintiffs to pursue meritless tort claims where the defendant's fees are being paid by a third party because neither the defendant nor the third party would be eligible to receive a fee award. Because such an interpretation would undermine the purpose of the statute, we reject it and conclude that CRI should have been awarded fees pursuant to section 13–17–201.[1]

¶ 23 As CRI points out and Monell acknowledges, this conclusion is consistent with the rule in other contexts that a party entitled to recover fees and costs from an opponent may do so regardless of whether an insurer or other third party actually paid those fees and costs. *See Boulder Plaza Residential, LLC v. Summit Flooring, LLC,* 198 P.3d 1213, 1217 (Colo.App.2008) ("Though [a third party] paid [the prevailing party's] attorney fees and litigation costs, [the prevailing party] is nevertheless entitled to seek recovery of those fees and costs [pursuant to prevailing party fee and cost award provision in contract] from any party liable therefor."); *Hale,* 23 P.3d at 1257 (same rule in the context of statute awarding "defendant" actual costs from a non-settling plaintiff).

¶ 24 Based on our conclusion that CRI was eligible to receive a fee award pursuant to section 13–17–201, we need not address the district court's alternative reasoning based on the collateral source rule.

## B. Fee Award for Litigating Motion for Fees and Costs

¶ 25 Monell also argues that the court erred by awarding fees for litigating the fees and costs motion because section 13–17–201 authorizes an award of fees incurred "in defending the action," and CRI's fees and costs motion was not part of defending the negligence claims. We agree.

¶ 26 A defendant is not entitled to fees for litigating a section 1317–201 motion for fees unless the plaintiff's defense to the motion is substantially frivolous, substantially groundless, or substantially vexatious pursuant to section 13–17–101, C.R.S.2014.[2] *See Foxley v. Foxley,* 939 P.2d 455, 460 (Colo.App.1996) (The holding that fees may not be awarded for litigating a section 13–17–102 fee request unless the defense to that motion lacked substantial justification was "necessarily applicable to fees requested under § 13–17–201."); *see also Little v. Fellman,* 837 P.2d

---

1. We express no opinion about whether CRI must transmit all or part of the fee award to its insurer because that issue is not before us.

2. We emphasize that this proposition is limited to motions for fees pursuant to section 13–17–201. *See Stresscon Corp. v. Travelers Prop. Cas. Co. of Am.,* 2013 COA 131, ¶ 125, — P.3d — (expressly rejecting the comparison of fees on fees awards made pursuant to section 10–31116(1), C.R.S.2014, and section 13–17–102).

197, 204 (Colo.App.1991) (In a case where it awarded fees for litigating the merits pursuant to section 13–17–102, the court noted that "[a]lthough this court has upheld the award of attorney fees incurred in a hearing on attorney fees, as a predicate to such award, there must be a determination that the defense of such a motion lacked substantial justification."), *overruled on other grounds by In re Marriage of Aldrich,* 945 P.2d 1370 (Colo.1997). The district court did not find that Monell's defense to CRI's fees and costs motion was substantially frivolous, groundless, or vexatious, nor does CRI argue that it was. Therefore, we reverse the court's order awarding CRI attorney fees for litigating the fees and costs motion.

## C. Appellate Attorney Fees

 ¶ 27 Finally, CRI requests attorney fees on appeal. We grant CRI its reasonable fees relating to its defense of the dismissal order, *see Wark v. Bd. of Cnty. Comm'rs,* 47 P.3d 711, 717 (Colo.App.2002) ("A party who successfully defends [a C.R.C.P. 12(b)(5)] dismissal order is also entitled to recover reasonable attorney fees incurred on appeal."), but deny its request for fees relating to its defense of the court's fee award. On remand, the district court shall determine the amount of reasonable attorney fees allocable to defending the dismissal.

## IV. Conclusion

¶ 28 The order granting the motion to dismiss and the fee award for litigating it are affirmed. The fee award for litigating the fees and costs motion is reversed and the case is remanded to the district court for an award of reasonable attorney fees incurred defending the dismissal order, but not the fee award, on appeal.

JUDGE ROMÁN and JUDGE TERRY concur.