23CA0769 Ulrich v Leprino Foods 07-03-2024 COLORADO COURT OF APPEALS Court of Appeals No. 23CA0769 City and County of Denver District Court No. 21CV30077 Honorable Andrew J. Luxen, Judge Kathleen Marie Morales Vega, as next friend of O.M., a minor, and Nicole Ulrich, as next friend of Bianca Ulrich and Gianna Jarvis, minors, Plaintiffs-Appellants, v. Leprino Foods Company, a Colorado corporation, and Refrigeration Concepts, Inc., a Michigan corporation, Defendants-Appellees. JUDGMENT AFFIRMED Division II Opinion by JUDGE GROVE Sullivan and Martinez*, JJ., concur NOT PUBLISHED PURSUANT TO C.A.R. 35(e) Announced July 3, 2024 Ridley, McGreevy & Winocur, P.C., Robert T. Fishman, Denver, Colorado, for Plaintiffs-Appellants Campbell, Killin, Brittan & Ray LLC, William C. Brittan, Margaret R. Pflueger, Denver, Colorado; Fennemore Craig P.C., Cody C. Bourke, Denver, Colorado for Defendant-Appellee Leprino Foods Company Harris, Karstaedt, Jamison & Powers, P.C., Jamey W. Jamison, Andrew J. Carafelli, Dino G. Moncecchi, Englewood, Colorado, for Defendant-Appellee Refrigeration Concepts, Inc. 
*Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and § 24-51-1105, C.R.S. 2023. 
1 ¶ 1 Plaintiffs, Kathleen Marie Morales Vega — as next friend of O.M., a minor — and Nicole Ulrich — as next friend of minors Bianca Ulrich and Gianna Jarvis — appeal the district court’s order granting summary judgment in favor of defendant Refrigeration Concepts, Inc. (RCI). We affirm. I. Background ¶ 2 This lawsuit arises from the tragic deaths of Joseph Jarvis and Odaniz Xavier Otiz Quiñones (decedents), both of whom died while working on the roof of defendant Leprino Food Company’s Greeley facility. Jarvis and Quiñones were independent contractors for Ulrich Process Piping, LLC (UPP), which RCI (as a general contractor for Leprino) hired as a subcontractor to perform welding and pipefitting work on a water chiller upgrade to the Leprino facility. As the project’s general contractor, RCI maintained workers’ compensation insurance at all relevant times. ¶ 3 Jarvis and Quiñones were killed by the explosion of a twelve-
inch water pipe on the roof of the Leprino facility. The twelve-inch water pipe, which was part of the chiller project and was located next to an unpressurized four-inch steel pipe, had been pressurized with nitrogen for pneumatic testing several days earlier. And 
2 although testing on the twelve-inch water pipe was complete, RCI had not emptied it and instead had used it as a makeshift storage container for nitrogen for at least the next eight days. As we explain further below, the undisputed admissible evidence presented by the parties on summary judgment showed that three UPP employees — Jarvis, Quiñones, and Gerardo Galarza (who suffered minor injuries) — were instructed to work on the four-inch steel pipe that was adjacent to the twelve-inch water pipe. However, they appear to have instead attempted to perform work on the twelve-inch water pipe, which led to the explosion. ¶ 4 Ulrich and Vega sought workers’ compensation benefits on behalf of the decedents’ children in North Carolina, where UPP is located. The North Carolina Industrial Commission awarded benefits to Jarvis’s children, but the disposition of Quiñones’s workers’ compensation case is not clear from the record. Ulrich and Vega then filed suit against Leprino and RCI in Denver District Court, seeking damages under theories of premises liability and wrongful death. Consistent with their pursuit of workers’ compensation benefits in North Carolina, Ulrich and Vega alleged in 
3 their Colorado complaint
1 that, “[a]t all relevant times hereto, Decedents were acting in the course and scope of their work for the extension project.” ¶ 5 After the close of discovery, Leprino and RCI both moved for summary judgment. Leprino argued that it was insulated from tort liability under section 8-41-402, C.R.S. 2023. The district court agreed and granted summary judgment for Leprino. Plaintiffs do not challenge that ruling on appeal. ¶ 6 In its summary judgment motion, RCI contended that it was a “statutory employer” and thus could not be held liable for the deaths of Jarvis and Quiñones under any tort theory because it maintained workers’ compensation insurance, see § 8-41-
401(1)(a)(I), (2), C.R.S. 2023, and had contracted out work to UPP that was part of its regular business, see Krol v. CF & I Steel, 2013 COA 32, ¶ 25. 1 The operative complaint at the time that Leprino and RCI filed for summary judgment was the fifth amended complaint, but the allegation that the explosion occurred while Jarvis and Quiñones were acting in the “course and scope” of their work for UPP appeared in each of the previous five complaints. 
4 ¶ 7 Plaintiffs urged the district court to reject RCI’s summary judgment motion on several grounds. As relevant here, they argued for the first time — and contrary to the allegation that they had made in every version of their complaint — that Jarvis and Quiñones were not performing work within the scope of UPP’s contract with RCI at the time of their deaths.
2 To the contrary, plaintiffs asserted that RCI instructed Jarvis and Quiñones to finish pneumatic testing on the twelve-inch pipe by depressurizing it and then moving it for pipefitting purposes — a task which would indisputably be outside the scope of their contracted work. As evidentiary support for this contention, plaintiffs attached to their summary judgment response a police report summarizing statements made by Galarza and Andrew Gregorich, the manager of the Leprino facility. However, they did not submit an accompanying affidavit, deposition, interrogatory response, or other sworn or 2 Plaintiffs also argued that UPP did not prove that it qualified for statutory employer status because it had not provided sufficient proof of its workers’ compensation policy and that, because UPP is a North Carolina company, the protections afforded to statutory employers under Colorado law did not apply. The district court rejected these arguments and appellants do not pursue them on appeal. 
5 otherwise verified statement supporting the information contained in the officer’s report. ¶ 8 The district court ruled that the undisputed facts established that RCI met the definition of a statutory employer. The court first observed that RCI’s contract with Leprino required RCI to maintain workers’ compensation insurance, and it noted further that RCI had produced certified documentation of its policy with an accompanying affidavit. See § 8-44-101(1), C.R.S. 2023 (outlining insurance requirements for “statutory employer” status). The court then turned to whether the decedents’ work was a part of RCI’s regular business. Although it acknowledged the disagreement over what Jarvis and Quiñones were doing when the pipe exploded, it did not delve into the dispute, noting only that “[p]laintiffs allege that Quinoñes and Jarvis were conducting pneumatic testing, rather than welding work, as they had been contracted to perform.” The court found this allegation insignificant, however, because “RCI’s regular business . . . involves a scope of work that includes both welding and pipefitting.” As a result, the court concluded that RCI was entitled to summary judgment because it was a statutory employer immune from tort liability. 
6 II. Analysis ¶ 9 Plaintiffs contend that the district court erred by granting RCI summary judgment because there is a genuine dispute as to what Jarvis and Quiñones were doing at the time of the explosion. Although they conceded at oral argument that RCI carried its initial burden of presenting evidence that Jarvis and Quiñones were working within the scope of the contract, plaintiffs nonetheless maintain that they submitted countervailing evidence showing that there was a factual dispute on that issue that would require a jury to resolve. Specifically, plaintiffs contend that they presented evidence showing that RCI directed Jarvis and Quiñones to perform work that was outside the scope of the contract by having them depressurize the twelve-inch water pipe as part of pneumatic testing. Plaintiffs, however, submitted no admissible evidence to support this claim and therefore failed to create a genuine dispute of material fact. Thus, RCI was entitled to summary judgment 
7 because it presented undisputed evidence that it was a statutory employer.
3 III. Standard of Review ¶ 10 We review an order granting summary judgment de novo. Poudre Sch. Dist. R-1 v. Stanczyk, 2021 CO 57, ¶ 12. Summary judgment is proper if there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. C.R.C.P. 56(c). We give the nonmoving party “the benefit of all favorable inferences that may reasonably be drawn from the undisputed facts and resolve[] all doubts against the moving party.” City of Fort Collins v. Colo. Oil & Gas Ass’n, 2016 CO 28, ¶ 8. “In the context of a summary judgment proceeding, an issue of material 3 Plaintiffs also argue that the district court erroneously applied the regular business test by focusing on whether welding or pipe fitting was part of RCI’s regular business rather than considering what Jarvis and Quiñones had been instructed to do. We do not reach this issue because we conclude that the undisputed admissible evidence demonstrates that the Jarvis and Quiñones were performing work within the scope of the contract at the time of their deaths. See Monell v. Cherokee River, Inc., 2015 COA 21, ¶ 13 (if the scope of a contract is clear, regular business test is unnecessary); see also City of Aurora v. Dep’t of Revenue, 2023 COA 17, ¶ 11 (appellate court may affirm grant of summary judgment on any ground supported by the record). 
8 fact is one, the resolution of which will affect the outcome of the case.” Krane v. Saint Anthony Hosp. Sys., 738 P.2d 75, 77 (Colo. App. 1987). ¶ 11 At the summary judgment stage, “[t]he moving party bears the initial burden of showing no genuine issue of material fact exists.” Westin Operator, LLC v. Groh, 2015 CO 25, ¶ 20. Once this burden is met, the nonmoving party must “establish that there is a triable issue of fact.” D.R. Horton, Inc.-Denver v. D & S Landscaping, LLC, 215 P.3d 1163, 1167 (Colo. App. 2008). The nonmoving party may not rest on the allegations made in the pleadings but instead must provide facts “by affidavit or otherwise” to show there is a triable issue. Han Ye Lee v. Colo. Times, Inc., 222 P.3d 957, 960 (Colo. App. 2009). Any such evidence that the nonmoving party presents must be admissible, Hunter v. Mansell, 240 P.3d 469, 474 (Colo. App. 2010), and “a failure to state admissible facts in the affidavit . . . may justify the court in entering summary judgment for the opposing party.” In re Estate of Abbott, 39 Colo. App. 536, 540, 571 P.2d 311, 314 (1977). 
9 IV. Principles of Law ¶ 12 The Workers’ Compensation Act (the Act) provides exclusive remedies for injured employees and bars all civil actions and remedies against an employer for, and on account of, such injuries. §§ 8-41-102, -104; see also Humphrey v. Whole Foods Mkt. Rocky Mountain/Sw., L.P., 250 P.3d 706, 708 (Colo. App. 2010). However, this immunity is only afforded if (1) the employer is a “statutory employer” as defined by the Act, Finlay v. Storage Techn. Corp., 764 P.2d 62, 63 (Colo. 1988); (2) the employer or, as relevant here, the subcontractor maintains workers’ compensation insurance, § 8-41-
401(2); and (3) either the contracted business and work are clear, and the subcontractor was injured performing work that was within the scope of the contracted work, Monell v. Cherokee River, Inc., 2015 COA 21, ¶ 13, or the contracted “work is part of an entity’s regular business, as defined by its total business operation,” Krol, ¶ 25. The third element is not met if the work performed is clearly outside the contract, or, if the contract’s scope is unclear, the work performed is outside of the contractor’s regular business. See Cowger v. Henderson Heavy Haul Trucking Inc., 179 P.3d 116, 119-
21 (Colo. App. 2007). 
10 ¶ 13 A contractor seeking immunity from a civil action by an injured subcontractor must satisfy all three elements. Here, plaintiffs only contest whether the work that Jarvis and Quiñones were performing at the time of the explosion was within the scope of the contracted services. V. Evidence Regarding Work Performed ¶ 14 Because it is uncontested that RCI met its initial burden on summary judgment, we only briefly summarize the evidence before the district court that would support that point. Among other things, exhibits attached to the parties’ summary judgment papers included the following: • a transcript of RCI supervisor John LaVigne’s deposition (which was attached to plaintiffs’ summary judgment response), who testified that the day before the explosion he had instructed the UPP employees to perform welding work on a four-inch steel pipe that ran adjacent to the twelve-inch water pipe that ultimately exploded; and • a transcript of the deposition of RCI site supervisor Larry Ezinga, who testified that no one from RCI told 
11 the UPP employees to depressurize the pipe or instructed them on how to do so. ¶ 15 Plaintiffs filed both a response to the summary judgment motion and a surreply and argued at length that Jarvis and Quiñones had performed work on the twelve-inch water pipe because RCI had asked them to perform pneumatic testing — which would have been outside the scope of the contract — but the only evidence that they offered to support this claim came in the form of a police report that summarized interviews by the investigating officer with Galarza and Gregorich. The report stated that Galarza, through an interpreter, had told the officer that the UPP employees had been instructed to depressurize the pipe and were doing so when the explosion occurred. As for Gregorich, the report said that he described for the officer Leprino’s internal investigation and its conclusion that the pipe had exploded when someone attempted to remove its end cap without first depressurizing it. Neither Gregorich nor Galarza was deposed or submitted an affidavit. ¶ 16 In its reply in support of summary judgment, RCI argued that the information contained in the police report was inadmissible hearsay, but the district court did not address this question 
12 because it concluded that RCI was a statutory employer under the “regular business” rule. ¶ 17 With this background in mind, we turn to whether the evidence that plaintiffs contend showed that there was a genuine dispute of material fact — i.e., the statements by Galarza and Gregorich — was admissible. Before doing so, we acknowledge that the district court does not appear to have explicitly considered this issue. Nonetheless, RCI challenged the admissibility of the statements in its summary judgment reply, and we are in the same position as the district court to consider the admissibility of the statements in question. See People v. Dominguez, 2019 COA 78, ¶ 13 (noting that a district court’s application of hearsay law is reviewed de novo). ¶ 18 Hearsay is a “statement other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted.” CRE 801(c). Unless a hearsay statement meets either a rule-based or statutory exception, it is not admissible. CRE 802. The proponent bears the burden of demonstrating an exception applies. People v. Vanderpauye, 2023 CO 42, ¶ 25. Hearsay included within hearsay is inadmissible 
13 unless each part of the combined statements conforms with an exception to the hearsay rule. CRE 805. Where a statement — like the police report at issue here — contains multiple layers of potential hearsay, “the court must analyze each layer separately to determine whether it falls within a recognized hearsay exception or exclusion.” People v. Phillips, 2012 COA 176, ¶ 101. ¶ 19 We begin our analysis with the police report itself. CRE 803(8)(B) allows public records and reports, including police reports, to be admitted even though they constitute hearsay so long as the circumstances around the report do not indicate a lack of trustworthiness. Bernache v. Brown, 2020 COA 106, ¶ 16. Thus, the report itself is admissible under CRE 803(8). Id. ¶ 20 However, “[s]tatements are not automatically admissible under CRE 803(8) merely because they are contained in a public report.” Leiting v. Mutha, 58 P.3d 1049, 1053 (Colo. App. 2002). Rather, to be admissible, each statement contained in such a report must meet its own hearsay exception. Id. ¶ 21 Plaintiffs contend that the police report’s summary of Galarza’s statements was admissible because the statements were an excited utterance. CRE 803(2). A statement qualifies as an 
14 excited utterance if it “relat[es] to a startling event or condition,” and the declarant made the statement while he “was under the stress of excitement caused by the event or condition.” Id.; People v. Abdulla, 2020 COA 109M, ¶ 64. The proponent of the hearsay evidence must show that the event was sufficiently startling or exciting to prevent the normal thought process of an observer; the statement was made as a spontaneous reaction to the event; and the declarant observed the startling event. People v. Hagos, 250 P.3d 596, 623 (Colo. App. 2009). When determining whether a statement was spontaneous, we consider the temporal proximity to the event, whether the statement was made in response to questioning, and the condition of the declarant. Abdulla, ¶ 65. “While there is no ‘bright-line time limitation’ for an excited utterance, the statement must be a spontaneous reaction rather than the operation of ‘normal reflective thought processes.’” Id. (quoting People v. Stephenson, 56 P.3d 1112, 1115-16 (Colo. App. 2001)). ¶ 22 Nothing in the police report suggests that Galarza’s statements were spontaneous. The report states that the officer attempted to speak with Galarza at the hospital shortly after the explosion but 
15 that Galarza “was not psychologically capable due to shock[,] . . . and he would need time to process the incident.” When the officer returned to the hospital to follow up several hours later, Galarza was speaking with a counselor and a Leprino human resources manager. It was only then that the officer conducted the interview. ¶ 23 Under these circumstances, plaintiffs did not carry their burden of showing that Galarza’s statements qualified as an excited utterance. First, several hours passed between the explosion and the interview. The officer specifically noted that he waited to allow Galarza to gather his thoughts and calm down — in other words, the officer gave Galarza enough time to regain his “normal reflective thought processes,” Stephenson, 56 P.3d at 1115-16, before conducting the interview. Second, Galarza’s statements were made in response to questioning and thus were not spontaneous. Third, Galarza had received medical attention. Fourth, Galarza spoke with human resources and a counselor before participating in the officer’s interview, and, according to the report, had already “made contact with Jarvis’[s] spouse and advised her of what had occurred.” 
16 ¶ 24 Plaintiffs assert that the circumstances here were similar to those in People v. King, 121 P.3d 234 (Colo. App. 2005), because the excited utterance exception applied in that case even though the statements were made several hours after the event. Here, however, the officer noted that Galarza was “in a better condition for an interview” when he returned to the hospital. That contrasts sharply with King, where the statements were made hours after the event, yet the declarant was still visibly shaking and bleeding. Id. at 237-
38. ¶ 25 Accordingly, the police report’s summary of the Galarza interview was hearsay, and plaintiffs have not established that any exception applies. It was therefore inadmissible and could not be considered at the summary judgment stage. ¶ 26 As for Gregorich’s statements, we once again disagree with plaintiffs’ argument that they were admissible. The police report reflects that, during his interview with the officer, Gregorich explained that his internal investigation led him to believe that the three UPP employees were working on the pressurized twelve-inch water pipe when it exploded. Plaintiffs summarily assert that nothing in the record suggests that Leprino’s internal investigation 
17 constitutes inadmissible hearsay, but this flips the evidentiary burden on its head. As already noted, plaintiffs themselves bear the burden of establishing that an exception applies to their hearsay evidence. Yet plaintiffs fail to identify a hearsay exception that could apply to the summary of Gregorich’s statements — much less make an argument for its admissibility. Thus, Gregorich’s statements were also inadmissible. ¶ 27 In short, the nonmoving party cannot rely on mere allegations to create a dispute of material fact when the movant supports its argument with admissible evidence. C.R.C.P. 56(e). Plaintiffs failed to present evidence to rebut RCI’s claim that Jarvis and Quiñones were doing work within the scope of the contract at the time of the explosion. And because they did not demonstrate via the submission of admissible evidence that there was a genuine dispute of material fact as to the work that Jarvis and Quiñones were doing or had been instructed to do, RCI proved as a matter of law that it was a statutory employer and was therefore entitled to summary judgment. VI. Disposition ¶ 28 We affirm the district court’s entry of summary judgment. 
18 JUDGE SULLIVAN and JUSTICE MARTINEZ concur.