# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 51923-2-II |
| Respondent, | |
| v. | |
| CHRISTOPHER R. JOHNSON, | ORDER GRANTING MOTION TO PUBLISH OPINION AND PUBLISHING OPINION |
| Appellant. | |

RESPONDENT State of Washington filed a motion to publish this court's opinion filed on January 28, 2020. After consideration, the court grants the motion. It is now

**ORDERED** that the final paragraph in the opinion which reads "A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record pursuant to RCW 2.06.040, it is so ordered." is deleted. It is further

**ORDERED** that the opinion will now be published.

**FOR THE COURT**

**PANEL**: Jj. Worswick, Sutton, Cruser

_____
PRESIDING JUDGE

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

# DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 51923-2-II |
| Respondent, | |
| v. | |
| CHRISTOPHER R. JOHNSON, | UNPUBLISHED OPINION |
| Appellant. | |

WORSWICK, J. — Following an online sting operation, a jury found Johnson guilty of attempted second degree rape of a child,[1] attempted commercial sexual abuse of a minor,[2] and communication with a minor for immoral purposes.[3] On appeal, Johnson argues that (1) the trial court erred by declining to give an entrapment jury instruction, (2) his trial counsel provided ineffective assistance by failing to argue same criminal conduct at sentencing, and (3) a community custody condition restricting his access to and use of the internet is unconstitutional.

We hold that (1) the trial court did not err when it did not include an entrapment jury instruction, (2) Johnson was not deprived of effective assistance of counsel, and (3) the community custody condition is constitutional. Accordingly, we affirm.

---

[1] RCW 9A.44.076; RCW 9A.28.020.

[2] RCW 9.68A.100; RCW 9A.28.020.

[3] RCW 9.68A.090(2).

FACTS

Law enforcement created a posting in the Craigslist casual encounters section. The posting was titled, "Crazy and Young. Looking to Explore. W4M Bremerton" and stated, "Bored and home alone. Been watching videos all day. Really looking to meet a clean DDF guy that can teach me what it's like to be an adult. HMU if interested, winking smiley face. I'm lots of fun."[4] 6 Verbatim Report of Proceedings (VRP) at 552.

Johnson responded to the ad, "I'm real and very interested. . . . I lappy [sic] . . . 'to trade pics. I lope [sic] to hear from you. I want to make you feel amazing." 6 VRP at 555. Law enforcement replied with an e-mail address under the name "Brandi," asking, "Do you want to teach me to [be] a grown up?" and attached a photograph of a female. 6 VRP at 555-56.[5] Johnson responded affirmatively and asked how old she was, where she was located, and if they could "use" her place. 6 VRP at 556. "Brandi" stated, "I'm 13 and on my own." 6 VRP at 556. She said she was staying with a friend in Bremerton whose mother was gone for a few days, so Johnson could come over.

Johnson replied, "Who all will be at the house. I'm just trying to be cautious as you are underage." 6 VRP at 557. Johnson suggested the two meet in public, and they arranged to meet at a minimart near "Brandi's" location. 6 VRP at 558. "Brandi" asked what Johnson would teach her. Johnson replied, "I want to teach you how to suck my c**k, how to c*m, how to ride

---

[4] "W4M" stands for woman for man. 6 VRP at 552. "DDF" stands for drug and disease free. 6 VRP at 552. "HMU" stands for hit me up. 6 VRP at 552.

[5] We identify law enforcement by the undercover persona for clarity.

my c**k, how to take my c**k deep. I'll show you many things. Is this what you're looking for?" 6 VRP at 558.

"Brandi" responded affirmatively and asked if Johnson could "help out with" money. 6 VRP at 558. Johnson said, "I can help out a little that way. Have to be honest, I'm already nervous because of your age, and now you're asking for this. . . . I get it. Don't get me wrong. As long as everything you're telling me is true, I'm just trying to let you know what I'm thinking." 6 VRP at 559. Johnson said that he had to make sure work would not conflict with their meet up. When "Brandi" asked if later would be better, Johnson replied, "Nope. I got it all worked out." 6 VRP at 561. Johnson drove to the designated minimart. "Brandi" then gave Johnson the address of the house and he drove toward that location. Law enforcement apprehended Johnson while on his way from the minimart to the house. At the time of his arrest, Johnson was carrying forty dollars.

The State charged Johnson with (1) attempted second degree rape of a child, (2) attempted commercial sexual abuse of a minor, and (3) communication with a minor for immoral purposes. During the trial, witnesses testified to the above facts.

Johnson testified on his own behalf. He stated that he believed the Craigslist posting was an "age-role-play fetish." 6 VRP at 672. Johnson testified that he wanted to meet the person and was "playing detective" to discern who this person was because he did not believe the person was a thirteen-year-old girl. 6 VRP at 682. He also acknowledged that no one forced him to respond to the posting.

The trial court denied Johnson's request to include a jury instruction on the affirmative defense of entrapment. The jury found Johnson guilty as charged.

At sentencing, Johnson's counsel did not argue that Johnson's three crimes constituted the same criminal conduct. The trial court placed community custody restrictions on Johnson, including, "Do not use or access the World Wide Web unless specifically authorized by CCO [(community corrections officer)] through approved filters." Clerk's Papers (CP) at 99. Johnson appeals his judgement and sentence.

## ANALYSIS

### I. ENTRAPMENT JURY INSTRUCTION

Johnson argues that the trial court erred by not including an entrapment jury instruction. We disagree.

To obtain a jury instruction regarding a party's theory of the case, there must be substantial evidence in the record supporting the requested instruction. *State v. O'Dell*, 183 Wn.2d 680, 687, 358 P.3d 359 (2015). To prove the affirmative defense of entrapment, a defendant must show, by a preponderance of the evidence, that he committed a crime, that the State or a State actor lured or induced him to commit the crime, and that the defendant lacked the disposition to commit the crime. *State v. Lively*, 130 Wn.2d 1, 9, 921 P.2d 1035 (1996); RCW 9A.16.070. A defendant may not point to the State's absence of evidence to meet his evidentiary burden for an affirmative defense. *State v. Fisher*, 185 Wn.2d 836, 850-51, 347 P.3d 1185 (2016).

Entrapment is not a defense if law enforcement "merely afforded the actor an opportunity to commit a crime." RCW 9A.16.070(2). We review a trial court's factual determination of whether a jury instruction should be given for an abuse of discretion. *State v. Condon*, 182 Wn.2d 307, 315-16, 343 P.3d 357 (2015).

As an initial matter, Johnson appears to argue that an instruction on an affirmative defense is required when there is *any* evidence that, if believed by the jury, would support that defense. Johnson cites only *State v. Harvill*, 169 Wn.2d 254, 257 n.1, 234 P.3d 1166 (2010) to support his argument.

But *Harvill* is distinguishable on its facts. Harvill's testimony, if believed by the jury, would have established the duress defense. *Harvill*, 169 Wn.2d at 257 n.1. The trial court refused to instruct the jury on the affirmative defense despite there being contradictory evidence of duress, and our Supreme Court reversed. *Harvill*, 169 Wn.2d at 256.

Here, Johnson points to no evidence to support an entrapment instruction. Law enforcement created a Craigslist posting purporting to be a woman looking for a man to teach her how to be an adult. Johnson initiated contact by answering the posting. Johnson testified that no one forced him to answer the posting. Although Johnson stated he wanted to be cautious because "Brandi" was underage, he steered the conversation into explicitly sexual territory by graphically explaining his sexual desires to the purported thirteen-year-old. When "Brandi" suggested meeting at a later time, Johnson declined, stating that he was available to meet. There is no evidence that law enforcement lured or induced Johnson.

Johnson argues that he was entitled to an entrapment instruction because the State failed to show he had a predisposition to commit the crimes against children, and there was no evidence of a history regarding perverse activity towards children. But pointing to the State's absence of evidence does not meet Johnson's evidentiary burden for his affirmative defense. *Fisher*, 185 Wn.2d at 850-51. Instead, the evidence shows that law enforcement merely afforded Johnson the opportunity to commit his crimes. Johnson willingly responded to the posting, steered the conversation to explicitly sexual topics, testified that he wanted to meet the person, and drove to the agreed locations. Because Johnson failed to show any evidence entitling him to a jury instruction on entrapment, we hold that the trial court did not err by refusing to instruct the jury on entrapment.

## II. INEFFECTIVE ASSISTANCE OF COUNSEL

Johnson argues that he was deprived of effective assistance of counsel during sentencing when counsel failed to argue that Johnson's convictions were the same criminal conduct. Specifically, he argues that his intent for all three crimes was to "have sex with the person who posted the ad." Br. of Appellant at 14. We disagree.

A. *Legal Principles*

The Sixth Amendment to the United States Constitution and article I, section 22 of the Washington Constitution guarantee effective assistance of counsel. *State v. Grier*, 171 Wn.2d 17, 32, 246 P.3d 1260 (2011). Defense counsel's obligation to provide effective assistance applies to sentencing. *State v. Rattana Keo Phuong*, 174 Wn. App. 494, 547, 299 P.3d 37 (2013). To demonstrate that he received ineffective assistance of counsel, Johnson must show

both (1) that defense counsel's performance was deficient and (2) that the deficient performance resulted in prejudice. *State v. Linville*, 191 Wn.2d 513, 524, 423 P.3d 842 (2018). Defense counsel's performance is deficient if it falls below an objective standard of reasonableness. *State v. Estes*, 188 Wn.2d 450, 458, 395 P.3d 1045 (2017). Prejudice ensues if the result of the proceeding would have been different had defense counsel not performed deficiently. *Estes*, 188 Wn.2d at 458. Because both prongs of the ineffective assistance of counsel test must be met, the failure to demonstrate either prong will end our inquiry. *State v. Classen*, 4 Wn. App. 2d 520, 535, 422 P.3d 489 (2018). We strongly presume that defense counsel's performance was not deficient. *State v. Emery*, 174 Wn.2d 741, 755, 278 P.3d 653 (2012).

Failure to argue same criminal conduct at sentencing may constitute ineffective assistance of counsel. *Rattana Keo Phuong*, 174 Wn. App. at 547. To establish that defense counsel was ineffective when he failed to argue same criminal conduct, Johnson must demonstrate that there is a reasonable probability that the trial court would have found same criminal conduct. *See State v. Munoz-Rivera*, 190 Wn. App. 870, 887, 361 P.3d 182 (2015); *Rattana Keo Phuong*, 174 Wn. App. at 547-48.

B.      *Same Criminal Conduct*

For the purpose of calculating a defendant's offender score, multiple current offenses that encompass the same criminal conduct are counted as a single offense. RCW 9.94A.589(1)(a). Crimes constitute the same criminal conduct when they "require the same criminal intent, are committed at the same time and place, and involve the same victim." RCW 9.94A.589(1)(a). If any requirement is not present, the offenses are not the same criminal conduct. *State v.*

*Chenoweth*, 185 Wn.2d 218, 220, 370 P.3d 6 (2016). The definition of "same criminal conduct" is applied narrowly to disallow most same criminal conduct claims. *State v. Aldana Graciano*, 176 Wn.2d 531, 540, 295 P.3d 219 (2013). A defendant bears the burden of establishing that two or more offenses are the same criminal conduct. *Aldana Graciano*, 176 Wn.2d at 540.

Regarding the criminal intent prong, the relevant inquiry is to what extent, viewed objectively, did Johnson's criminal intent change from one crime to the next. *State v. Tili*, 139 Wn.2d 107, 123, 985 P.2d 365 (1999). We look to the relevant statutes to identify the objective intent requirement for each crime. *Chenoweth*, 185 Wn.2d at 223.

In *Chenoweth*, the defendant had been convicted of six counts each of child rape and incest, with each pair of charges based on the same physical act. *Chenoweth*, 185 Wn.2d at 220. Citing the applicable statutes for child rape and incest, the court stated that "objectively viewed, under the statutes, the two crimes involve separate intent. The intent to have sex with someone related to you differs from the intent to have sex with a child." *Chenoweth*, 185 Wn.2d at 223. As additional support, the court noted that the legislature had expressly intended to punish incest and rape as separate offenses. *Chenoweth*, 185 Wn.2d at 224. "[W]here legislative intent is clearly indicated, that intent controls the offender score." *Chenoweth*, 185 Wn.2d at 224.

C.      *Johnson's Counsel Was Not Ineffective*

The jury found Johnson guilty of (1) attempted second degree rape of a child, (2) attempted commercial sexual abuse of a minor, and (3) communication with a minor for immoral purposes. We must examine the criminal intent required for each crime.

Regarding Johnson's first conviction, attempted second degree rape of a child occurs when a person, not married to and at least three years older than the child, attempts to have sexual intercourse with a child between the ages of twelve and fourteen. RCW 9A.44.076. The crime requires the intent to have sexual intercourse. *State v. Wilson*, 158 Wn. App. 305, 317, 242 P.3d 19 (2010). "Sexual intercourse" is defined as any penetration however slight, or any sexual contact between one person's sex organs and the mouth or anus of another. RCW 9A.44.010(1)(a), (c). "Sexual contact" is "any touching of the sexual or other intimate parts of a person done for the purpose of gratifying sexual desire." RCW 9A.44.010(2).

Regarding the second conviction, attempted commercial sexual abuse of a minor is the exchange of anything of value as compensation for "sexual conduct" with a minor. RCW 9.68A.100. This requires the intent to engage in sexual conduct with a minor in exchange for something of value. RCW 9.68A.100; *Ohnemus v. State*, 195 Wn. App. 135, 142, 379 P.3d 142 (2016). A minor is someone under the age of 18. RCW 9.68A.011(5). "Sexual conduct" means sexual intercourse or sexual contact as defined by chapter 9A.44 RCW. RCW 9.68A.100(5).

Regarding the third conviction, the intent required for communication with a minor for immoral purposes is the intent to communicate with a minor with a predatory purpose of promoting the minor's exposure to or involvement in sexual conduct. RCW 9.68A.090(2); *State v. Hosier*, 157 Wn.2d 1, 11-12, 133 P.3d 936 (2006).

Here, Johnson's three crimes did not involve the same criminal intent. The intent for second degree rape of a child is the intent to have sexual intercourse, whereas the intent for commercial sexual abuse of a minor is the intent to exchange something of value for sexual

conduct. RCW 9A.44.076; RCW 9.68A.100. Further, the intent required for communication with a minor for immoral purposes requires a different intent than the other two crimes; the intent to communicate with a minor with a predatory purpose of sexualizing the minor. Accordingly, we hold that these three crimes require different criminal intent. An argument for same criminal conduct would have failed. As a result, we hold that Johnson's trial counsel did not provide ineffective assistance because Johnson cannot show prejudice.

### III. RESTRICTION ON INTERNET USE

The trial court ordered that Johnson "not use or access the World Wide Web unless specifically authorized by CCO through approved filters." CP at 99. Johnson argues that this condition is unconstitutional because "it vests unbridled discretion in the community corrections officer and prohibits a much broader swath of First Amendment activity than necessary." Br. of Appellant at 14-15. We disagree.

The trial court can only impose community custody conditions authorized by statute. *State v. Kolesnik*, 146 Wn. App. 790, 806, 192 P.3d 937 (2008). If the trial court had statutory authority, this court reviews the trial court's decision to impose the condition for an abuse of discretion. *State v. Armendariz*, 160 Wn.2d 106, 110, 156 P.3d 201 (2007). An abuse of discretion occurs when a trial court's imposition of a condition is manifestly unreasonable. *State v. Hai Minh Nguyen*, 191 Wn.2d 671, 678, 425 P.3d 847 (2018). The imposition of an unconstitutional condition is manifestly unreasonable. *Hai Minh Nguyen*, 191 Wn.2d at 678.

A.    *The Condition is Constitutionally Permissible*

Johnson argues that the condition is unconstitutionally overbroad and, as a result of this overbreadth, not narrowly tailored to his crimes.  We disagree.

A criminal statute that encompasses constitutionally protected speech activities within its prohibitions may be overbroad and violate the First Amendment.  *State v. Halstien*, 122 Wn.2d 109, 122, 857 P.2d 270 (1993).  However, a defendant's First Amendment right may be restricted if reasonably necessary to accomplish the essential needs of the state and public order, and is sensitively imposed.  *State v. Bahl*, 164 Wn.2d 739, 757, 193 P.3d 678 (2008).

To support his argument, Johnson cites *Packingham v. North Carolina*, ___ U.S. ___, 137 S. Ct. 1730, 198 L. Ed. 2d 273 (2017), and *United States v. Holena*, 906 F.3d 288 (3d Cir. 2018).  These cases are distinguishable.  In *Packingham*, the Supreme Court held unconstitutional a North Carolina statute that prohibited sex offenders from accessing social network websites where the sex offender knows that the website permits minor children to be members or maintain web pages.  *Packingham*, 137 S. Ct. at 1737.  This blanket restriction impermissibly encompassed more First Amendment activity than was necessary to serve North Carolina's purpose of protecting children from sex offenders.  *Packingham*, 137 S. Ct. at 1737.

Following *Packingham*, the Third Circuit in *Holena*, examined probation conditions for a defendant convicted of attempting to entice a minor to engage in sexual acts through the internet.  *Holena*, 906 F.3d 290-91.  There, the defendant was prevented from possessing or using any computers or other electronic communications.  *Holena*, 906 F.3d at 291.  At the same time, the defendant was also prevented from accessing the internet without approval of his probation

11

officer. *Holena*, 906 F.3d at 291. Further, the defendant was required to have monitoring software on his computers and submit to searches of his electronic devices. *Holena*, 906 F.3d at 291. The Third Circuit recognized the contradiction between a blanket ban regarding computer use condition and the merely restrictive conditions. *Holena*, 906 F.3d at 291. On this contradiction alone, the court vacated the conditions and remanded. *Holena*, 906 F.3d at 291. However, the court went on to hold that the blanket ban on using a computer or other electronic device was impermissible. *Holena*, 906 F.3d at 294-95. Regarding the restriction on internet use with monitoring software and approval from a probation officer, the court stated that this restriction resulted in some tailoring, but required clarity from the lower court on remand. *Holena*, 906 F.3d at 293-94.

Here, Johnson's restriction on internet use is different. The prohibition on "use or access the World Wide Web unless specifically authorized by CCO through approved filters" is reasonably necessary to accomplish the essential needs of the State. Johnson was convicted of attempted rape of a child, attempted commercial sexual abuse of a minor, and communication with a minor for immoral purposes resulting from his solicitation of an undercover officer on Craigslist's casual encounters section through the Internet.

This community custody condition is sufficiently tailored to Johnson's crimes because Johnson is prohibited from using the medium through which he committed his crimes. Restricting his future internet use is reasonably necessary to prevent repeated offenses. The condition is also sensitively imposed. Unlike the statute in *Packingham* or condition in *Holena*, Johnson is not absolutely banned from internet-based activities. Johnson may use the internet

with the permission of his CCO and through approved filters. Johnson is subject to a partial deprivation of his interest in having access to the internet after he committed crimes through that medium. We hold that this restriction on Johnson's internet use is reasonably necessary to accomplish the essential needs of the State.[6]

B.      *The Condition Is Not Vague*

Johnson also argues that the condition is unconstitutionally vague because of the discretion provided to the CCO. We disagree.

Vague community custody conditions violate due process under the Fourteenth Amendment to the United States Constitution and article I, section 3 of the Washington Constitution. *State v. Irwin*, 191 Wn. App. 644, 652-53, 364 P.3d 830 (2015). It is an abuse of discretion for a sentencing court to impose an unconstitutionally vague condition. *Hai Minh Nguyen*, 191 Wn.2d at 678. A community custody condition is unconstitutionally vague if either "(1) it does not sufficiently define the proscribed conduct so an ordinary person can understand the prohibition or (2) it does not provide sufficiently ascertainable standards to protect against arbitrary enforcement." *State v. Padilla*, 190 Wn.2d 672, 677, 416 P.3d 712 (2018).

Here, Johnson is prohibited from accessing the internet unless he has the approval of his CCO. The proscribed conduct is understandable to an ordinary person. Without his CCO's permission, Johnson cannot access the internet. As a result, the condition is not vague based on the first vagueness prong. Regarding the second prong, the condition does not allow for arbitrary

---

[6] We recognize that Division One of this court recently came to a different conclusion regarding a similar community custody condition. *State v. Forler*, No. 79079-0-I, slip op. at 27-28 (Wash. Ct. App. June 10, 2019) (unpublished), http://www.courts.wa.gov/opinions/pdf/790790.pdf.

No. 51923-2-II

enforcement. The condition does not rely on Johnson's CCO to define or give meaning to terms in the condition. Rather, the CCO merely approves or rejects Johnson's use of the internet before he accesses it. Prior approval from a CCO to access the internet is a sufficiently ascertainable standard. Because the condition does not meet either prong of the vagueness test, we hold that it is not unconstitutionally vague.

We affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Worswick, P.J.

We concur:

Sutton, J.

Cruser, J.

14